[Sac. No. 59.   Department Two.—April 13, 1896.]

TIMOTHY PAIGE, APPELLANT, *v.* S. L. AKINS, RESPONDENT.

AGENCY — OVERSIGHT OF LAND — TENANCY—OWNERSHIP OF CROP — PRESUMPTION—BURDEN OF PROOF — INJUNCTION.—A person employed as agent for another in renting his lands and having the oversight and care of the property for a fixed compensation cannot confer upon himself the rights or privileges of a tenant of any part of the land, or the ownership of a crop grown thereon; and, in the absence of evidence of an agreement that he should cultivate the land as tenant, the presumption is that he did it as foreman, and the burden of proof is upon him to show clearly that there was an agreement between him and the owner of the land that he should cultivate it as tenant for a share of the crop, else the owner of the land will be deemed entitled to the crop, and may enjoin its removal by the agent.

ID.—FINDING OF TENANCY—INSUFFICIENCY OF EVIDENCE.—The evidence reviewed, and held insufficient to justify a finding that the defendant was a tenant of the plaintiff under a cropping agreement with him.

ID.—SETTLEMENT — MUTUAL RECEIPTS IN FULL—PAROL EVIDENCE—INCLUSION OF CROP — RELEASE—ESTOPPEL. — Where a settlement was made between the defendant and the plaintiff, and mutual receipts in full of all demands were passed between them, it is error to allow the defendant to testify that the settlement did not include or cover the crop in controversy between them, or to testify to his intentions. or to the meaning or legal effect of the writing, nor can the defendant claim that the settlement and receipts operated as a release to him of all expense and liability connected with the crop, and, at the same time, in-

CXII. CAL.—26

sist that his right to the crop was not considered in or affected by the settlement.

ID.—INJUNCTION—INSOLVENCY OF DEFENDANT.—In order to sustain an injunction to prevent the removal of a crop, it is sufficient to show the inability of the defendant to respond in damages, and absolute and complete insolvency need not be shown.

ID.—DISCRETION, HOW EXERCISED.—The granting of an injunction is, to some extent, a matter of discretion, and the discretion should be exercised in favor of the party most likely to be injured.

APPEAL from a judgment of the Superior Court of Stanislaus County and from an order denying a new trial. WILLIAM O. MINOR, Judge.

The facts are stated in the opinion.

*Edward J. Pringle,* and *C. A. Stonesifer,* for Appellant.

The court erred in admitting evidence in reference to the intention of the parties, in the execution of the defendant's receipt to plaintiff, and as the result of such evidence, in refusing to give any effect whatever to the receipt. The receipt is broad enough to release plaintiff from any claim of defendant with reference to the crop. (*In re Denny etc. Co.,* 2 Hill, 220; *Scott* v. *Morris,* 9 Serg. & R. 124; *Sands* v. *Codwise,* 4 Johns. 557; 4 Am. Dec. 305; Anderson's Dictionary, tit. "Demand"; Black's Dictionary; Bouvier's Dictionary; *Marks* v. *Marriot,* Ld. Raym. 114; *Vedder* v. *Vedder,* 1 Denio, 258.) The instrument is more than a receipt; it is a contract, a release of all demands, and cannot be contradicted by parol evidence. (1 Greenleaf on Evidence, sec. 305; *Snodgrass* v. *Parks,* 79 Cal. 60; 2 Wharton on Evidence, sec. 1064; *Swain* v. *Grangers' Union,* 69 Cal. 186; *Pereira* v. *Central Pac. R. R. Co.,* 66 Cal. 95; *Stackpole* v. *Arnold,* 11 Mass. 27; 6 Am. Dec. 150; *Deland* v. *Amesbury etc. Mfg. Co.,* 7 Pick. 246; *Henry* v. *Henry,* 11 Ind. 236; 71 Am. Dec. 354; *Alcorn* v. *Morgan,* 77 Ind. 186; *Goodwin* v. *Goodwin,* 59 N. H. 550; *Smith* v. *Holland,* 61 N. Y. 635; Stephen's Digest of Evidence, art. 91; *Miller* v. *Travers,* 8 Bing. 244; *Greer* v. *Johnston,* 32 U. C. Q. B. 82; *Thompson* v. *Williams,* 30 Kan. 114; Code Civ. Proc., sec. 1962.)

*Eastin & Griffin,* for Respondent.

The two papers which passed between the parties were mere receipts, and as such are not conclusive upon either of them; neither of them was a contract, nor was so considered by the parties. (Webster's Dictionary, tit. "Receipt"; *Hawley* v. *Bader,* 15 Cal. 45; *Jackson* v. *Sacramento etc. R. R. Co.,* 23 Cal. 268; *Bergson* v. *Builders' Ins. Co.,* 38 Cal. 541; *Winans* v. *Hassey,* 48 Cal. 634; *Pereira* v. *Central Pac. R. R. Co.,* 66 Cal. 92; *Snodgrass* v. *Parks,* 79 Cal. 55; 5 Lawson's Rights, Remedies, and Practice, sec. 2543; Benjamin on Sales, sec. 662; ?. Parsons on Contracts, 686; *Smith* v. *Schulenberg,* 34 Wis. 41; 2 Wharton on Evidence, sec. 1064; *Calhoun* v. *Richardson,* 30 Conn. 227; *Carr* v. *Miner,* 42 Ill. 179; *Elston* v. *Kennicott,* 52 Ill. 272; *Rowe* v. *Wright,* 12 Mich. 289; *Hazard* v. *Loring,* 10 Cush. 267; *Bell* v. *Utley,* 17 Mich. 508; *Trevidick* v. *Mumford,* 31 Mich. 467; *Hammond* v. *Hannin,* 21 Mich. 383; 4 Am. Rep. 490; *Brewster* v. *Lathrop,* 15 Cal. 21; 7 Wait's Actions and Defenses, 450; Civ. Code, sec. 1642; 2 Parsons on Contracts, 634, 684.)

Haynes, C.—Suit to enjoin defendant from harvesting and removing a crop from plaintiff's land. The defendant had judgment, and the plaintiff appeals therefrom, and also from an order denying his motion for a new trial.

Certain special issues were submitted to a jury, and these being found in favor of the defendant were adopted by the court and incorporated in the general findings, all of which, appellant contends, were not justified by the evidence; and he also specifies several particulars in which he alleges the court erred in its rulings upon matters of evidence.

During all the time covered by the evidence the plaintiff resided in the city of San Francisco, and owned large quantities of land in the counties of Stanislaus and Merced. About ten years before the commencement of this action the defendant became a tenant, or cropper, upon a portion of plaintiff's land in Merced

county known as the " Gardner ranch," and farmed it
two years upon shares.  At the expiration of that time
the defendant was employed as agent and foreman in
charge of all plaintiff's lands in said counties, with au-
thority to rent the same, collect the rents, and negotiate
the purchase and sale of land.  Afterward, at defend-
ant's suggestion, an arrangement was made between the
parties by which the plaintiff purchased cattle, and fur-
nished pasture for them, the defendant to take charge
of them and pay " the running expenses," and, after
deducting one per cent per month interest on the pur-
chase price of the cattle, was to receive one-half of the
profits as compensation for his services and expenses.
This relation between the parties as to the cattle, and
the relation of principal and agent in reference to rent-
ing the land, and defendant's control as foreman, contin-
ued until March 25, 1892, when the plaintiff discharged
him.  Whether the other relation—that of landlord and
tenant—existed at that time, is the principal question
in the case, the subject of the action being the owner-
ship of a crop upon five hundred acres of plaintiff's
land which the defendant claims he put in as tenant,
he to pay a share of the crop for the use of the land.
Acting upon this claim, the defendant began to cut and
remove said crop, and plaintiff, claiming that the crop
was not planted by the defendant upon shares, but that
he did it as plaintiff's foreman, for plaintiff's benefit,
and at plaintiff's expense, brought this action to enjoin
him from cutting and removing said crop.

I think the evidence insufficient to justify the find-
ing that defendant planted the crop under an agreement
with the plaintiff that he should cultivate said land as
tenant for a share of the crop.

The crop in question was grown upon five hundred
acres of land which was part of a larger tract contain-
ing about fourteen hundred acres.  The whole tract was
subdivided in the summer of 1891 into lots or parcels
of about twenty acres each for purposes of sale.  Prior
to the subdivision, three hundred and fifty acres, of the

five hundred upon which the crop in question was grown, was let to a third party, for the purpose of raising a crop thereon to be planted in the winter of 1891, and harvested in 1892, and the tenant had summer-fallowed the same in the spring of 1891. When it was concluded to subdivide the land into colony lots, it was thought that the cultivation of the summer fallow by said tenant might interfere with the sale of the lots included in the three hundred and fifty acres already plowed by the tenant, and at defendant's suggestion the plaintiff purchased the summer-fallow from the tenant, paying therefor two dollars and fifty cents per acre. This statement as to the situation and condition of the land, and of the relations existing between the parties, is essential to a just and true comprehension of the evidence upon the vital point of the controversy.

There is no controversy or conflict as to the fact that the defendant was the agent of plaintiff in renting his lands and collecting the rents. For these services, and for his services as foreman, he received a compensation of fifty dollars per month. The record does not specify with any particularity the duties attached to the position of foreman, but we may assume that the word is used in its ordinary sense, denoting the chief or superintendent of employees, as one who has the general oversight and care of the property. All of these duties involve the relation of principal and agent, and it was not in the power of the defendant to contract, as the agent of the plaintiff, with himself as the other party to the contract. A tenancy, such as is claimed by the defendant to have existed as to this land and crop, could only be created by contract; and, if the contract were valid, it gave the tenant the exclusive right to the control and possession of the crop, until it was harvested and divided, and vested in him the absolute ownership of the share to which he was entitled. That an agent cannot confer upon himself such rights and privileges in the lands and property of his principal is too well settled to require extended discussion or citation of

authorities. It is only necessary to say that the absence of an intention on the part of the agent to injure his principal, or that the self-imposed terms of the tenancy were those usually made in renting to third persons, do not affect the question, and will not defeat the plaintiff's right to the remedy he has invoked. (Pomeroy's Equity Jurisprudence, sec. 959, quoted and approved in *Sterling* v. *Smith,* 97 Cal. 343.)

The only question of fact, therefore, which need be considered is whether the plaintiff personally leased the land to the defendant.

The defendant was not only an agent for the purpose of leasing plaintiff's lands and collecting the rents, but was also plaintiff's foreman, and it is not questioned that in the latter capacity he had authority to cultivate the tract in question and raise the crop in controversy for the plaintiff's benefit and at his expense; and, in the absence of evidence of an agreement that he should cultivate the land as tenant of the plaintiff, the presumption is that he did it as plaintiff's foreman, since he had authority to cultivate it as foreman, and, in the absence of a special agreement, he had no authority to cultivate it as tenant. The burden is, therefore, upon the defendant to show such an agreement as authorized him to cultivate it as tenant, and the proof of it must be clear.

It is true the defendant denied that he put in the crop as foreman for the plaintiff; but that is no evidence of an *agreement* between him and the plaintiff that he would put it in for a share of the crop. He testified, however, that when it was decided to purchase the summer-fallow the plaintiff asked, "What will we do with the summer-fallow in case the land is not all sold?" And defendant replied, "Any that is remaining there I will put it in"; that plaintiff replied, "Very well"; and, "pursuant to that understanding or conversation, I put in the crop." But, as already shown, he was authorized to put in the crop for the plaintiff as his foreman, and the language used was entirely consistent with his in-

tention to do so, and gave no intimation of a purpose to cultivate the land on shares. Besides, in accordance with his advice, the plaintiff had just purchased the summer-fallow, because if a tenant cultivated the land he would desire, and would be entitled, to hold it until his crop was removed, and if the defendant entered into the same relation and put in the crop on the same terms his rights and interests would be as secure and sacred; and the plaintiff, upon that theory, gained nothing by buying off the former tenant at an expense of eight hundred and seventy-five dollars.

According to defendant's testimony, the foregoing was all that was said in regard to putting in the crop until in February, 1892, notwithstanding he commenced to put it in as early as December 14, 1891. As to the conversation in February, the defendant testified that plaintiff asked him "how he was putting it in; what the conditions were." The inquiry itself would appear remarkable if there had been an "agreement" in regard to it made long before. Defendant, however, replied, "Just the customary way; the same as the others"; and that plaintiff did not dissent. Upon being asked what part of the crop he claimed for himself and what part for Mr. Paige, he replied: "Three-fourths for myself and one-fourth for Mr. Paige. That was never expressly mentioned between myself and Mr. Paige. Those are the usual conditions for putting in crops on the shares; that is, where the landowner furnishes nothing but the land. The seed that seeded this land came from Newman's warehouse. It was Mr. Paige's wheat. I do not know whether that was ever charged to me or not. I never drew an order on Mr. Paige for the wheat. I sent him a statement of the amount used, I think."

He further testified that he had some talk about the seed, and plaintiff told him if he could get some better seed than was in the warehouse to buy it; that he thought he traded with Newman for part of the seed (traded Paige's wheat), and paid four bits or a dollar a

ton difference. "The difference was charged, I presume, and Mr. Paige paid it."

Upon further cross-examination defendant identified certain letters written by him to the plaintiff, from which certain passages are quoted, as follows: "November 21, 1891. There is 350 acres of summer-fallow on the Montgomery ranch. I will need seed wheat to put it in."

"December 1, 1891. What shall I do with the summer-fallow on the Montgomery land? It ought to be put in soon."

"December 11, 1891. Newman has not got any wheat that is better than yours that is stored there, so I will sow it; I don't need an order for the wheat."

"December 14, 1891. I am getting in the summer-fallow now; running four six-horse harrows. Looks like rain. We are on it alone."

"December 17, 1891. Summer-fallow is going in in good shape; the rain stopped me a day and a half, but have been working this afternoon. We had forty-seven hundredths of an inch of rain last storm; the weather is warm and grain will come quickly if the weather continues favorable."

"December 28, 1891. I am plowing for barley. We had quite a nice rain yesterday, and it is now raining again and is warm; vegetation is starting in early."

The foregoing synopsis of the testimony shows the material facts directly touching the crop here in question, as brought out on the examination of the defendant.

It will be observed that until some two months after he commenced seeding the land there was no intimation that he was putting it in on shares; that, though the ground had been summer-fallowed at an expense to the plaintiff of eight hundred and seventy-five dollars, no provision was made for the repayment of that sum, and while he claimed the benefit of furnishing the seed, it was furnished by the plaintiff without any agreement

that it should be charged to him or repaid out of the crop. These circumstances are wholly inconsistent with defendant's claim, but are entirely consistent with the contention of plaintiff that he did the work as plaintiff's foreman. The plaintiff not only testified that the defendant put in the crop for him as his agent or foreman, that he paid him fifty dollars per month for his services as such, but that "He [the defendant] employed the labor and I paid them. The seed used was mine. I had it stored at Mr. Newman's warehouse, and the seed was taken from there to put in this crop. The crop was put in upon summer-fallow. The former tenant had done the work of summer-fallowing. I paid that tenant two dollars and fifty cents per acre for doing it," and expressly denied any arrangement or agreement that defendant should put it in on shares.

The defendant did not deny plaintiff's express statement that he paid for the labor employed in putting in the crop, and admitted that he also paid for the summer-fallowing, and that the land was sown with plaintiff's wheat, and did not know whether it was charged to him or not.

There was much testimony as to the continuance of the relation of landlord and tenant after defendant became plaintiff's agent and foreman. The defendant insisted that he farmed portions of plaintiff's land almost, if not quite, every year; that if he failed to find a tenant, and the season was well advanced, he would put in the crop himself; that "there might have been some seasons I made special contracts, and other seasons I would put it in without consulting him; just go ahead —go right along just the same as I had done, perhaps, the year before." The plaintiff testified that there had been occasions when a special arrangement had been made with the defendant, either verbally or by letter, but that he did not otherwise raise crops upon the shares so far as he knew; that he might have done so without his knowledge, as he seldom knew the names of the tenants cultivating the land, the reports being usu-

ally made as to particular lands and not as to particular tenants; and denied that the defendant was authorized to cultivate his lands on shares without special authority.

It is not necessary to discuss this part of the evidence, nor to consider how far the custom of the parties can affect or enlarge or create the power of an agent to deal with himself as to his principal's property; for though the agent may contract with his principal, yet the fact that a contract was made must be clearly shown, and the burden of showing it must rest upon the agent, and it must also appear to be fair, just, and reasonable, or the principal will not be bound. In no aspect, therefore, is the finding of the alleged cropping agreement justified by the evidence. Other findings intimately connected with the principal one above discussed must fall with it.

After the defendant was discharged by the plaintiff, a settlement was had between the parties, and the following paper was executed by defendant to plaintiff:

"NEWMAN, April 21, 1892.

"Received of Timothy Paige one hundred dollars, in full satisfaction for all demands of every kind and nature to date, and for any interest I have in any of the mowers and wagons and tools of every kind on the ranch of said Paige.          S. L. AKINS."

And plaintiff executed and delivered to the defendant the following:

"NEWMAN, April 20, 1892.

"Received of S. L. Akins one hundred dollars, in full of all notes and book accounts, and all demands to date.          TIMOTHY PAIGE."

Upon cross-examination, plaintiff testified that he and the defendant met and agreed upon the terms of settlement; that he told defendant he preferred to settle all their matters rather than to have any litigation, and he said he did too; and upon the examination in chief of defendant he was asked by his counsel the following

question: " I will ask you whether or not you have set-
tled with Mr. Paige in a way to include that crop, and
to transfer your rights to him in connection with other
conditions you made in the settlement, whatever they
were." Plaintiff's objection was overruled, and the
witness answered: " No, sir, I would not."

The court erred in overruling plaintiff's objection.
It permitted the defendant to testify to the legal effect
of a written instrument, and say to the court and jury
that the receipt did not cover or include the crop in
controversy. He could testify as to the situation of the
parties, the surrounding circumstances, and to such
matters of fact as would put the court as nearly as pos-
sible in the situation of the parties, but he could not be
permitted to testify to his intentions, or to the meaning
or legal effect of the writing.

Whether the instrument has or should be given the
conclusive effect contended for by appellant need not
be considered in view of the conclusions reached upon
other points. The evidence may be quite different upon
another trial; and, as already stated, it must be read and
construed in the light of surrounding circumstances
disclosed by the evidence. This much may be said,
however, that if it be conceded that defendant put in
the crop upon shares, and the effect of the settlement
and receipts should be held to operate as a release of
the defendant for the cost of the summer-fallow, or the
value of the seed wheat which belonged to the plaintiff,
or the expense of putting in the crop, the contention of
the plaintiff that the defendant thereby released all
claim to the crop should be sustained. Respondent, in
his brief (page 27), says: "Anything charged to Akins
for seed or feed was settled by the receipts, because this
was a book account." But it must be evident that the
defendant cannot shield himself behind the settlement
from any liability connected with the crop, and at the
same time insist that his right to the crop was not con-
sidered in or affected by the settlement. Putting such
contention in plain English, the defendant would say:

"The plaintiff furnished the land and the seed, advanced the cost of the summer-fallow, paid for the labor in putting in the crop, and paid me for superintending it, then released me from all these liabilities, and leaves me three-fourths of the crop for harvesting it."

The evidence of the inability of the defendant to respond in damages was sufficient. Absolute and complete insolvency need not be shown. The granting of injunctions are, to some extent, matters of discretion, and should be exercised in favor of the party most likely to be injured. (*Hicks* v. *Compton*, 18 Cal. 206; *Real Del Monte Min. Co.* v. *Pond Min. Co.*, 23 Cal. 83, 85.)

The judgment and order appealed from should be reversed.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.