[Civ. No. 3226.   Fourth Dist.   Sept. 25, 1943.]

EVERETT CISCO et al., Appellants, v. MILDRED PEARL VAN LEW, Respondent.

Harold King and H. E. Thompson for Appellants.

Swing & Swing for Respondent.

GRIFFIN, Acting P. J.—Plaintiffs and appellants Cisco brought this action to compel defendant and respondent to specifically perform an alleged agreement to sell certain real property. Joined in the same complaint as a party plaintiff, appellant McGuire, in a second cause of action, seeks to recover a real estate broker's commission of $100 on the same transaction.

In November, 1941, the defendant was the owner of the real property in question. She listed it with McGuire for sale, giving him an exclusive listing, reciting that the sale price thereof should be $2,500, payable $500 down and $25 per month thereafter. McGuire was a licensed real estate broker. He advertised the property for sale. The plaintiff Everett Cisco called at the office of McGuire and inquired about the purchase of the property. After being advised of the purchase price and the terms, which defendant had fixed in her listing agreement, Cisco asked McGuire whether or not the real property could be purchased for $2,000 cash. McGuire advised defendant that he had an offer of $2,000 cash for the property and she told him that she would call at his office the following morning and discuss the matter. Cisco stated to McGuire that he would be out of town the following day. The record shows, however, that he was not out of town during that day but remained in the city during the entire time. Cisco made a deposit of $100 in cash with McGuire. During the dealings with Cisco, McGuire had an inquiry from a Mrs. Cohn as to the sale of the same property at a higher price than that offered by the Ciscos. This fact was not communicated by McGuire to the defendant. While at McGuire's office defendant apparently orally agreed to sell the property for $2,000 cash and on the following day McGuire and defendant went to the office of the title company and endeavored to open an escrow for the sale of the property in question. The Ciscos were not present. While at the title company's office, escrow instructions were prepared and during the preparation thereof, when asked the name of the purchaser, McGuire stated that he had forgotten his name but that he could return to his office and obtain the same. He testified that defendant said the name of the purchaser was of no importance and that the escrow clerk suggested that the instructions be drawn to provide that title should vest in J. H. McGuire, or his nominee. He also testified that this arrangement was agreeable to the defendant. The escrow instructions,

which were dated December 5, 1941, provided generally as follows: ''Security Title Insurance & Guarantee Company: I will hand you cash in the amount of $2,000, payable $100 on this date, and balance on demand before close of escrow, which you are instructed to use when, after recording the necessary instruments, you can procure *a* owner's policy of title insurance . . . showing title vested in J. H. McGuire, a married man, or his nominee. . . . I agree to pay one-half of escrow fee, new owner fee, recording of deed, and transfer of fire insurance. Signature—J. H. McGuire. . . . The conditions as above are hereby approved. I will hand you papers necessary to vest title as above, excepting such papers as are to be executed by vestee, and you will use the money and record instruments to comply with foregoing instructions, and pay balance to the present record owner or order, after paying your charges and disbursements, and commission in the sum of 5 per cent of $2,000 to J. H. McGuire. Signature—Mildred Pearl Van Lew.''

Neither Everett Cisco nor Mary Cisco, plaintiffs herein, were present at the time said instruction was signed, nor did they participate in the signing thereof. A deposit of $100 was made by McGuire in the form of a check.

In reference to the opening of the escrow, McGuire testified: that Everett Cisco said to him ''Go ahead and open the escrow . . .''; that ''when he (Cisco) paid me the $100 that was enough to know he meant business on the opening of the escrow and I had the right to open it''; that Cisco told him to buy it for him. Cisco corroborated this testimony. Three days after McGuire and defendant signed the escrow instructions above mentioned McGuire and Mr. Cisco went to the escrow office, signed and deposited therein the following instructions: ''You are hereby authorized and instructed to vest the property described in your above-numbered transaction in the name of Everett Cisco and Mary Cisco, husband and wife, as joint tenants. All other instructions to remain the same. J. H. McGuire. The above is hereby approved. Everett Cisco.''

The escrow was opened on Saturday, December 5, 1941, and provided for the full purchase price to be paid into escrow on demand before close of escrow. The escrow period, as fixed by the instructions, was 60 days. The evidence shows that a few days after opening the escrow a Mrs. Cohn made defendant an offer of $2,350 for the property. On January 24, 1942, defendant wrote the title company notifying them that she

had rescinded all agreements of every kind and nature "made by her with J. H. McGuire for good cause. . . ." On January 27, 1942, Cisco paid the balance of the full purchase price of $1,900 into the escrow. On February 9, 1942, defendant demanded the return of all documents deposited by her into escrow and refused to complete the sale or to recognize the escrow instructions or to pay the real estate commission claimed by McGuire. On February 11, 1942, this action was filed and later came on for trial. After proving the above facts and offering the above-mentioned written documents in evidence, the plaintiffs rested their case. Defendant moved for a nonsuit on the ground that the plaintiffs had failed to prove sufficient facts to entitle them to recover. The court granted the motion apparently on the theory that the contract could not be enforced because the Ciscos were not bound by the contract, were not named as purchasers therein, could not be compelled to perform their part of it, and for that reason there was no mutuality. From the judgment based upon the nonsuit plaintiffs appealed.

Appellants contend that the trial court erred in granting the motion because the contract is in writing subscribed by the party to be charged, describes the land to be conveyed, and names the consideration for which the defendant agreed to convey. Among other cases, they cite in support thereof *Bird* v. *Potter*, 146 Cal. 286 [79 P. 970]; *Steel* v. *Duntley*, 115 Cal.App. 451 [1 P.2d 999]; and also section 3388 of the Civil Code. It is claimed that in accordance with the foregoing authorities the contract in question contains all of the elements required by law to entitle it to be specifically enforced and that plaintiffs cannot be defeated because of lack of mutuality in the contract.

Respondent argues that specific performance may not be compelled (first) by one who claims to be a purchaser under an executory contract of sale required by the statute of frauds to be in writing, where the name or identity of a purchaser cannot be ascertained from the written note or memorandum of the contract subscribed by the party to be charged, and (second) that a mere nominee, appointed to receive title by a purchaser under a contract for the sale of real property, may not specifically enforce the purchaser's contract in the absence of an assignment to him of the purchaser's rights thereunder.

In discussing the first question presented, it becomes immediately apparent that the names of the plaintiffs Cisco

are not mentioned in any manner or form as parties to or purchasers under the original escrow instruction. It provides in part, that "I, (J. H. McGuire) will hand you cash in the amount of $2,000, payable $100 on this date . . . and balance on demand before close of escrow—when you (Mrs. Van Lew) can procure" a policy of title insurance on the described property "showing title vested in J. H. McGuire, a married man, or his nominee." This is the agreement alleged in the complaint and under the terms of which the defendant granted to J. H. McGuire, or his nominee the exclusive right to buy the property. A copy of the original instruction marked Exhibit A was attached to the complaint and by reference made a part thereof. The complaint alleges that by the instrument in writing (Exhibit A) J. H. McGuire authorized and instructed defendant "to vest the property . . . in the name of Everett and Mary Cisco . . . the nominees of said J. H. McGuire." The prayer of the complaint then asks that the agreement attached to the complaint (Exhibit A) be specifically performed according to the terms thereof, or for damages in the amount of $4,000. The answer to the complaint denies generally its allegations and alleges by way of affirmative defense that defendant was a woman without business experience and unaccustomed to handle business matters and imposed explicit trust and confidence in McGuire because he was a licensed real estate agent and depended upon him for information and advice in procuring a sale of her property at the best price obtainable; that at all times mentioned McGuire knew this fact and that for the purpose of inducing her to sign Exhibit A McGuire falsely and fraudulently represented to her that he had diligently endeavored to procure a sale of the real property upon terms set forth in the original listing; that he had only received an inquiry from one person interested in buying the property and that the best and only offer obtainable for the property was $2,000; that under these circumstances, she went to the office of the title company for the purpose of signing escrow instructions concerning the sale suggested; that McGuire did not disclose to her the name of the person he said was willing to purchase the property at $2,000, and represented to her that he could not remember his name; that he represented that it was unnecessary for her to know his name and that he would therefore sign Exhibit A as the apparent purchaser; that McGuire, during the time he was employed as her agent, received inquiries from other persons interested in the real property and received and knew of a bona fide offer from Mrs. Cohn in the

sum of $2,350, and that he knew that said sale could have been readily made and that he fraudulently suppressed and concealed such fact from her; that McGuire was then and there secretly employed by and acting as agent for the Ciscos and falsely suppressed and concealed such fact from her and failed to make a full or any disclosure thereof; and that promptly after the discovery of such fact so concealed, she rescinded the escrow instruction marked Exhibit A.

Section 1558 of the Civil Code provides: "It is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them."

In *Irvmor Corporation* v. *Rodewald*, 253 N.Y. 472 [171 N.E. 747, 70 A.L.R. 192], the defendant employed a broker to secure a purchaser for his property, naming $30,000 as his price. The broker obtained a $25,000 offer for the property from plaintiff which he submitted to defendant and which defendant said he would accept. A formal contract was to be afterwards prepared. In the meantime, defendant himself signed his name to a memorandum which did not describe the name of the proposed purchaser. Thereafter defendant found a better bargain and backed out. A judgment for specific performance was reversed. The court, speaking through Mr. Justice Cardozo, discusses most of the points involved in this appeal. It is there said:

"There is a settled rule of law that a note or memorandum of a contract for a sale of land must identify by name or description the parties to the transaction, a seller and a buyer." (Citing cases.)

The statute of frauds, section 1624 of the Civil Code, provides that the following contracts are invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged or by his agent: ". . . 4. An agreement . . . for the sale of real property, or of an interest therein; . . ." In 23 Cal.Jur. page 433, section 13, it is said: "Matters as to Which Certainty Required.—The requirement of certainty as to the agreement made in order that it may be specifically enforced extends not only to its subject matter and purpose, but to the parties, to the consideration and even to the place and time of performance, where these are essential." (Citing *Breckenridge* v. *Crocker*, 78 Cal. 529 [21 P. 179].) In that case it was held that when a contract of sale of real estate is evidenced by three telegrams, one from the agent of the owner of the property communicating a verbal offer, without naming the proposed purchaser; and

second, from the owner to his agent, telling him to accept the offer; and a third from the agent addressed to the proposed purchaser by name, simply notifying him of the contents of the telegram from the owner, but not otherwise indicating who the purchaser was, the contract is too uncertain as to the purchaser to be enforced, or to sustain an action for damages for its breach. In that case it was held that the judgment granting a nonsuit was proper.

The general rule stated in 25 Cal.Jur. page 506, section 34, is that "a contract for the purchase and sale of real property must be mutual and reciprocal in its obligations. Otherwise, it is not obligatory upon either party. Hence, an agreement to convey property to another upon his making payment at a certain time of a named amount, without a reciprocal agreement of the latter to purchase and pay the amount specified, is unenforceable." (See, also, 25 Cal. Jur. p. 503, sec. 32, and cases cited.)

Therefore, as between the Ciscos and defendant, Exhibit A, standing alone, does not identify or contain any reference to Ciscos as the purchasers under the claimed agreement, and lacking in this material element, an action for specific performance between them could not be successfully maintained under its terms and provisions. The subsequent escrow instruction given by McGuire to the title company (Exhibit B) is not alleged in the complaint to be any part of the written contract itself or any written note or memorandum subscribed by the defendant or by her agent. Nowhere in the complaint is it alleged, nor does it appear from Exhibit B itself that the defendant ever subscribed Exhibit B or authorized McGuire to do so on her behalf.

In *California National Supply Co.* v. *Black*, 48 Cal.App. 122 [191 P. 715], where a stockholder and officer of a defunct corporation whose stockholders were being sued, was agent therefor as well as for plaintiff's corporation, under such conditions it was held that the fact that the agent knew all about a transaction on both sides was not sufficient, under the law, to charge the plaintiff with such knowledge. Exhibit B on its face purports merely to authorize the title company to whom it is addressed to "vest the property . . . in the name of Everett Cisco and Mary Cisco, husband and wife, as joint tenants. All other instructions to remain the same." The Ciscos are not described therein as being either parties to the contract or purchasers thereunder, and nowhere therein do they assume any of the obligations of purchasers. On the

contrary, the last sentence of the instruction: "All other instructions to remain the same," expressly excludes any inference that the Ciscos were intended to be substituted for McGuire or to be anything other than the persons to whom McGuire, for reasons of his own, desired title to be conveyed as his nominees or agents. Any other interpretation would be pure speculation. (*Breckenridge* v. *Crocker, supra*.) It therefore follows that since it affirmatively appears from the complaint itself that the contract relied upon is alleged to be in writing, that Exhibit A is a copy of that contract, that Exhibit A is the only writing subscribed by defendant or by her authorized agent, and that the Ciscos cannot be identified either as parties or purchasers by reference to said Exhibit A, that therefore the alleged contract for the sale of the property involved, to the Ciscos, is uncertain and does not comply with the requirements of the statute of frauds and is not subject to specific enforcement.

We will next discuss the right or propriety of appellant McGuire, while acting as the agent of defendant, Mrs. Van Lew, and while occupying such fiduciary relationship, to make any contract with her whereby he became the purchaser of the property, and whether Ciscos, as mere nominees under such an agreement, can compel specific performance.

There appears to be no uncertainty or ambiguity as to the sense in which the words "his nominee" are used. They mean simply that title is to be "shown" as vested either in McGuire himself or such person or persons as McGuire should designate to receive title in his behalf. By the second instrument (Exhibit B) McGuire merely authorized and directed the escrow holder to vest the property in the name of Everett Cisco and Mary Cisco, husband and wife, as joint tenants. "All other instructions to remain the same." Any intention to assign any rights to the Ciscos or substitute them as parties to the escrow is expressly precluded by the fact that all other instructions were to remain the same. McGuire parted with no other rights and assigned none to the Ciscos. As before, he was in exclusive control of the escrow so far as the purchaser's rights thereunder were concerned, and the Ciscos were but "his nominees." The word "nominee" in its commonly accepted meaning, connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the

nominee of any property in or ownership of the rights of the person nominating him.

In *Schuh Trading Co.* v. *Commissioner of Internal Revenue,* 95 F.2d 404, 411, the court stated: "The word nominee ordinarily indicates one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, in representation of another, or as the grantee of another."

In the absence of an assignment from McGuire to the Ciscos or some other effective substitution of the Ciscos for McGuire as the purchasers, no rights become vested in the Ciscos which they are entitled to assert on their own behalf independently of McGuire. At best, they are but nominal parties seeking to enforce some right or rights of McGuire and not their own, and therefore the Ciscos have failed to establish any right or interest in the subject matter of the action which they, as mere nominees of McGuire, are entitled to have specifically enforced. If the Ciscos contend that they are entitled to relief in this action on the theory that they are nominees of McGuire, the burden is upon them to show, by competent evidence, that a valid contract existed for the sale of the property from defendant to McGuire through whom they must necessarily claim as his nominees.

In *Burke* v. *Bours,* 92 Cal. 108, 112 [28 P. 57], the court, quoting from section 959 of Pomeroy's Equity Jurisprudence, said:

". . . 'equity regards and treats the relation of principal and agent in the same general manner and with nearly the same strictness as that of trustee and beneficiary'; and this rule is even more rigidly recognized by section 2322 of the Civil Code, which provides that 'an authority expressed in general terms, however broad, does not authorize an agent . . . to do any act which a trustee is forbidden to do by article II, chapter I, title VIII,' of this code. . . . And referring to a sale made under these circumstances by an agent to himself, the author says: 'It will always be set aside, at the option of the principal; the *amount of consideration,* the *absence of undue advantage,* and other similar features are wholly immaterial.' "

The case of *Allen* v. *Dailey,* 92 Cal.App. 308 [268 P. 404], cited by appellants, can be distinguished from the instant case for the reason that there the agent was authorized to sell at a fixed price net to his principal, with the understanding that he was to be entitled to any excess over and above the

net price as his commission, whereas, in the instant case, McGuire was employed on a straight commission basis of five per cent of the purchase price. In the Allen case the court took the view that the agent had discharged his fiduciary duty when he obtained the net price required by his principal, and could, under such circumstances, be the purchaser himself, but carefully distinguished the rule applicable to ordinary agencies such as in the instant case. Even in that case the court said, at page 313, that "It is doubtless true that if the agency be the ordinary one wherein the agent is employed to obtain for his principal the highest possible price for the property beyond a fixed minimum, for which service the agent is to be paid a commission on a percentage basis, fiduciary relations arise out of such employment which preclude the agent from becoming the purchaser of the property or acting for others and thus unduly profiting to the injury of his employer."

Whether an agent may act as such for both parties seems to depend upon the circumstances of each case. The general rule is that an agent may represent both parties to a contract with their full knowledge and consent, but that where the agent represents the adverse party without his principal's consent, his contract is voidable at the option of the principal. (*California National Supply Co.* v. *Black, supra.*)

In some cases it has been held that it is a breach of trust for a person to act as agent both for the vendor and the vendee in the same sale. (*Hunsaker* v. *Sturgis*, 29 Cal. 142; 1 Cal.Jur. p. 794, sec. 81.) When one undertakes to deal with himself in different capacities, individual and representative, there is a manifest hostility in the position he occupies. Consequently, a contrivance which reduces the two parties to one, and admits an agent representing antagonistic interests to make a bargain by himself, is so far against the policy of the law that the contract is held to be void, unless the principal chooses afterwards, and with knowledge of all the circumstances that affect his possession, to ratify the act of his agent. (*Pacific Vinegar etc. Works* v. *Smith*, 145 Cal. 352 [78 P. 550, 104 Am.St.Rep. 442]; 1 Cal.Jur. page 797, sec. 84.) However, an agent and principal are not absolutely prohibited from dealing with each other in respect to the subject matter of the agency or trust, for the agent has the same right to deal directly with his principal as has a stranger in all their dealings with each other. The utmost faith is

required and the burden of proof is on the agent to show affirmatively that he acted in good faith, fairly and honestly, and though an agent may contract with his principal, yet the fact that a contract was made must be clearly shown, and the burden of showing it must rest upon the agent, and it must clearly appear that it was fair, just and reasonable, or the principal will not be bound. (*Burke* v. *Bours, supra; Rubidoex* v. *Parks,* 48 Cal. 215; *Paige* v. *Akins,* 112 Cal. 401 [44 P. 666]; *Curry* v. *King,* 6 Cal.App. 568 [92 P. 662]; *Hemenway* v. *Abbott,* 8 Cal.App. 450 [97 P. 190]; 1 Cal.Jur. p. 798, sec. 85, et seq.)

The trial court was justified in concluding that if the Ciscos adopt the theory that the contract was between defendant and themselves then, not only does it affirmatively appear on the face of the complaint, but the evidence conclusively establishes that the only escrow instructions, subscribed by defendant, and relied upon as the note or memorandum sufficient to take the case out of the statute of frauds, are insufficient for that purpose for the reason that the names or identity of the Ciscos either as parties to the escrow or as purchasers thereunder cannot be ascertained by reference thereto. To that extent such escrow instructions are uncertain and inchoate and at best no more than preliminary steps in the ultimate transaction contemplated by the parties. If, on the other hand, they adopt the theory that the same escrow instructions constitute a contract between defendant and McGuire which the Ciscos seek to enforce as nominees of McGuire, then McGuire, by virtue of his fiduciary relation to the defendant, was prohibited from making any such contact with defendant, and the Ciscos, by virtue merely of having been designated by McGuire as his nominees to receive title, not only acquired no property right or interest in the subject matter of the action, but by claiming under McGuire as his nominees, stand in his same position with respect to the validity of any contract made between him and the defendant and are subject to all presumptions and defenses which might have been urged against him. We therefore must conclude that the trial court was justified in holding that the plaintiffs failed to prove a sufficient case to support a judgment of specific performance. The granting of the nonsuit as to all three plaintiffs was proper.

Judgment affirmed.

Marks, J., concurred.