[Civ. No. 3483.    Fourth Dist.    Nov. 25, 1947.]

WILLIAM AUSTIN WHITLOW et al., Appellants, v. NATHAN WOLFE, Respondent.

Aaron Sapiro for Appellants.

Aaron B. Rosenthal and Wilson & Wilson for Respondent.

BARNARD, P. J.—This is an action for declaratory relief involving some sort of an option agreement executed by the parties on March 27, 1946.

The defendant was the owner of some 80 acres of unsubdivided land in the outskirts of San Bernardino. The plaintiffs were real estate agents of long experience, with an office in Los Angeles. For some eight months they had been trying, without success, to sell this property for the defendant. Finally, on March 27, 1946, the instrument in question was signed by the parties. On April 24, 1946, the plaintiffs sent a letter to the defendant stating that they thereby exercised the option "granted in the said agreement," demanding that he comply therewith and enclosing a certified check for $5,000. The defendant immediately replied, stating that no binding agreement existed or had ever existed between them, that any arrangments pending had been cancelled, and returning the check.

This action followed. The complaint alleged, among other things, that the plaintiffs were licensed and operating as real estate agents; that the parties had entered into the agreement in question whereby the defendant agreed to sell this property to the plaintiffs for the consideration named therein; that the plaintiffs had paid $5,000 within 30 days and had performed all other obligations imposed upon them by the agreement; and that after the contract was executed they had proceeded to make oral arrangement for the purpose

of carrying out its provisions and looking toward the sale of the lots after the subdivision was completed and the improvements installed. It is then alleged that in carrying out the agreement they had investigated as to what could be done in connection with financing the project and as to what was required in order to subdivide the property. Also, that they talked to several contractors who expressed a willingness to contract with the plaintiffs for the development of the property on terms acceptable to the plaintiffs, to pay the plaintiffs for the lots at the rate of $800 per lot, and to appoint the plaintiffs as their exclusive agents for the sale of the homes to be built on the lots. It was further alleged that the defendant attempted to repudiate the contract on April 15, 1946, and that the agreement was a fair and equitable one. The prayer was that the agreement to sell be declared to be valid, that it be specificially enforced, and for damages in the event specific performance is impossible.

The answer denied the construction placed on the agreement by the plaintiffs and alleged want of consideration, revocation on April 9, and cancellation and rescission by mutual consent.

With respect to the intention of the parties, one of the plaintiffs testified that before signing the option the defendant told them that "he had originally preferred to sell the property outright, but he was convinced he would have to put in the necessary improvements to subdivide the property before it was saleable." The other plaintiff testified that the defendant stated he would be willing to give them an option for 30 days as outlined in the agreement, providing they would use their best efforts in helping him to subdivide the property; that they would check the contractors' work and see that they did not overcharge; that they would help him get the approval of the proper authorities for the subdivision of the land; and that they would secure the best possible financing so he would not have to put up too much money. Also, that he stated that he wanted them to have a financial interest in the deal so he would not be left in the "lurch"; that he would require a deposit of $5,000 as a token of good faith on their part; and that this amount would be returned to them only after all the houses were constructed and then pro rata out of the mortgage payments as the last houses were built.

The court found, among other things, that the defendant had not agreed to sell this tract to the plaintiffs; that by the

instrument the parties intended and agreed that the plaintiffs, as real estate brokers, should assist the defendant in the sale and subdivision of this tract; that the $5,000 deposit was intended to secure the faithful performance by the plaintiffs of their obligations as brokers in assisting the defendant in the subdivision and sale of the tract; and that any offer contained in the option had been revoked, cancelled and rescinded. Judgment was entered to the same effect and decreeing that the plaintiffs recover nothing. This appeal followed.

Appellants' main contentions are that this instrument gave them an option to purchase this property in its entirety; that they exercised this option within the 30 days allowed; that a valid and binding contract for the purchase of the property by them then existed; that the court entirely misconstrued the instrument and its terms; and that the court's findings and conclusions are supported neither by the facts nor the law. While the appellants concede the usual and well-established rule that where the meaning and intent of a writing is doubtful the interpretation placed thereon by the trial court, if reasonable, will not be disturbed on appeal, they contend that the meaning and intent of the instrument here in question is not doubtful, that it gave them a right to buy this entire property at the rate of $200 per lot, that they exercised that option, thereby completing a clear and definite contract to that effect, and that no other interpretation is reasonable or possible.

The instrument in question was drawn by the appellants. We cannot agree that its language is so clear and definite as to call for no interpretation as to the meaning and intent of the parties, nor that it clearly provides for the exercise of an option within 30 days which would result in a binding agreement for the purchase and sale of this property.

While the instrument is called an option and recites that the respondent agrees to sell and convey the property to the appellants, this is qualified by the phrase ''on the following terms and conditions.'' The instrument then provides that this option shall be for 30 days and that upon the payment of $5,000, which ''shall be used as a deposit of good faith and also as a guarantee of 'Bond of Completion,' '' the respondent ''agrees to open a trust agreement embracing all the terms and conditions herein contained.'' These terms and conditions are as follows: The respondent agrees to sub-

divide the entire property into lots, meeting all regulations as to sewers, curbs and paving; to sell all of the lots to the appellants "when the aforementioned work of subdividing has been completed" at a price of $200 per lot, plus the actual cost of grading, paving, curbing and sewers; to subdivide Davidson Street first; to then subdivide Garner Street, at the option of the appellants, providing the lots on Davidson Street "have been sold"; to subdivide Turrill Street, provided the lots on Garner Street have been sold; that it is understood that construction will commence on the property within 30 days after grading on Davidson Street is completed; that the respondent will permit the appellants to erect, or cause to be erected, dwellings on said lots and furnish title to the lots as buildings are completed; and that he must accept, as payment for each lot, a part of the last payment on the loan used to erect the building thereon.

Aside from the uncertainties and inconsistencies of some of these provisions it appears, both from the terms of the instrument and the evidence, that the $5,000 deposit was not intended to apply on the purchase price of this property or any part thereof, but was for other purposes and was to be returned if and when the entire project was finally completed. The fact that such a deposit was required as a guarantee of good faith, to be later returned, and not as a payment on any purchase price, is much more consistent with the court's interpretation of this agreement than with appellants' contention that it was intended to complete a contract whereby a present purchase and sale of the property was agreed upon.

The 30-day option given to the appellants by the instrument was not one to purchase the property at the price indicated but was one to have a further trust agreement "opened" upon terms which were still uncertain and somewhat inconsistent, which called for certain things to be done by the respondent, and which required nothing to be done by the appellants. The effect of the instrument, at best, was to give the appellants, upon the exercise of an option within 30 days, the right to have something done which would give them a series of further options which they were free to act upon or not, as they chose. If the further trust agreement had been "opened" by the respondent the appellants would still not have obligated themselves to purchase this entire property or any part thereof, with the possible exception of one lot under the provision that it was understood that build-

ing would commence within 30 days from the grading of one street. The purported agreement is not only indefinite, uncertain and lacking in mutuality, but if there is one clear thing about it it is that the appellants would not, by exercising their option within 30 days, bind themselves to purchase this property or any considerable part of it, or to pay any part of the purchase price therefor. It even appears if they should later elect to take one lot and build one house, or have it built, the respondent must look to the mortgage loan, and not to the appellants, for the purchase price of the lot.

Under well-established rules, it clearly appears that the appellants were not entitled to specific performance in any form. It clearly appears that these parties, in executing this instrument, did not intend the effect now contended for by the appellants. While the real meaning and intent may be a matter of doubt, the conclusion reached by the trial court in this regard is not only a reasonable one but appears to be the most reasonable one, and no reason here appears for disturbing it. Incidentally, while the complaint contained the necessary allegation that this agreement was a fair and equitable one, and while the appellants are now contending that they agreed to pay $80,000 for this property, they also contend, in discussing the alternative matter of damages, that the evidence clearly discloses that this property was worth $412,800 at the time in question. (See *Cisco* v. *Van Lew,* 60 Cal.App.2d 575 [141 P.2d 433].)

In view of the fact that no contract of the nature relied on by the appellants here existed or could be enforced in this action, the further question as to the revocation of whatever offer had been made is not of great importance. While the evidence is conflicting in this regard, it is sufficient to show a revocation of any such offer by the respondent on April 9, 1946, and to further show the cancellation and rescission by mutual consent either on that date or between then and April 15.

However, it is further contended that this offer could not be revoked, under the law, because some consideration had passed. This is based on a portion of the appellants' own testimony as to the reason why they made certain investigations, most of which occurred after April 9. The claim thus made is little less than fantastic and appears, upon its face, to be inherently improbable, especially in the light of the allegations of the complaint and of other testimony given by

the appellants. The court was not obliged to accept this testimony at its face value or as necessarily controlling. The evidence, as a whole, is sufficient to sustain the court's findings to the effect that no consideration passed, that any offer made was revoked, and that all possible covenants of the parties were cancelled and rescinded.

Under the views already expressed, several other points raised by the appellants require no further consideration.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 22, 1948.