Fahey, Elizabeth M., J.
Defendant Harmon and Bank Defendants[1] (collectively “Defendants”) each move to dismiss plaintiff Dennis Farmer’s amended complaint.[2] Farmer moves for partial summary judgment on Count IV: Trespass, Count VI: Action to Quiet or Establish Title to Land, and Count VII: Declaratory Judgment.[3] For the reasons stated herein, Defendants’ Motions to Dismiss, in part treated as a Rule 56 Motion,[4] are DENIED and Farmer’s Motion for Partial Summary Judgment is ALLOWED IN PART and DENIED IN PART.
Defendants’ Motions to Dismiss require that the issue of resjudicatabe addressed. Farmer’s Motion for Partial Summary Judgment requires that this court *205 address, among other issues, the assignments of Farmer’s mortgage as well as Defendants’ required compliance with applicable statutes concerning notice of foreclosure.
I. DEFENDANTS’ MOTIONS TO DISMISS[5]
A. Res Judicata
Farmer claims that the foreclosure process was improper, that the resulting sale was void, and that his chain of title has been clouded. Defendants argue that the principles of res judicata prevent Farmer from now asserting these claims.[6] After consideration, this court concludes that Defendants are incorrect.
FNMA, and those in privity with it,[7] are judicially estopped from arguing that res judicata bars Farmer’s instant claims. “Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding.” Otis v. ArbellaMut. Ins. Co., 443 Mass. 634, 639-40 (2005), quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998). ‘The purpose of the doctrine is to prevent the manipulation of the judicial process by litigants.” Otis, 443 Mass. at 640, quoting Canavan’s Case, 432 Mass. 304, 308 (2000). “Application of the equitable principle of judicial estoppel to a particular case is a matter of discretion.” Id., citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001).
In support of its Motion for Summary Judgment in the Housing Court, FNMA dedicated an entire section of its memorandum to arguing that Farmer was precluded from bringing his counterclaims, including his wrongful foreclosure and G.L.c. 93A counterclaims, in Housing Court.[8] Plaintiffs Supp’l Aff. in Supp. of Motion for Summary Judgment, Exhibit B, pp. 7-8. FNMA stressed that because Farmer failed to meet any of the statutory criteria set forth in G.L.c. 239, §8A, Farmer could not avail himself of the right to raise any of his affirmative defenses or counterclaims. Id., Exhibit B, p. 8. While it is true that Farmer was neither a tenant nor a lease-holder under G.L.c. 239, §8a, Bank of New York explicitly authorized the Housing Court to “consider the former homeowner’s defense that the plaintiffs title is invalid because the foreclosure was not conducted strictly according to the statute.” 460 Mass, at 332. FNMA was certainly aware of this proposition as it cited to Bank of New York numerous times throughout its Motion for Summary Judgment filed in the Housing Court. See Farmer’s Supp’l Aff. in Supp. of Motion for Summary Judgment, Exhibit B. However, FNMA never sought to address the merits of Farmer’s counterclaims in the Housing Court, and instead, as noted above, argued that all of Farmer’s counterclaims, including his wrongful foreclosure counterclaims, must fail and should not even be addressed. See id., ExhibitB, pp. 7-8 (“These claims represent insufficient defenses to this action and must fail as a matter of law” and “As a former owner in possession of the property, the Defendant does not meet the statutory criteria for maintaining counterclaims or affirmative defenses in this action”). In turn, the Housing Court’s Memorandum of Decision stated that Farmer “cannot assert an affirmative defense to possession or counterclaims in this summary process action pursuant to G.L.c. 239, §8a, ¶1" and relied on the cases cited by FNMA in its Motion. Id., Exhibit C, p. 4. The Housing Court then dismissed all of Farmer’s counterclaims without prejudice. Id., Exhibit C, p. 5.
FNMA now urges this court to rule that Farmer is barred from asserting his title-related wrongful foreclosure claims on the theoiy that those claims were already litigated in the Housing Court. See Banks’ Supp’l Mem. of Law in Support of Motion to Dismiss, p. 1. FNMA, and those in privity with it, are estopped from asserting that res judicata bars Farmer’s claims after FNMA erroneously argued that the Housing Court could not adjudicate those claims in the first place, and after the Housing Court accepted FNMA’s proposition and dismissed Farmer’s wrongful foreclosure counterclaims without prejudice. See Otis, 443 Mass, at 640-41 (application of judicial estoppel requires both that the position being asserted is directly contrary to the position previously asserted and that the party must have succeeded in convincing the court to accept its prior position). This court will not allow FNMA, and those in privity with it, to manipulate the judicial process in this way and judicially estops FNMA, and those in privity with it, from asserting res judicata.
Notwithstanding these waiver and judicial estoppel bases, this court goes on to address the merits of Defendants’ res judicata argument. It is important to clarify that the term “res judicata? encompasses both claim preclusion and issue preclusion. Kobrin v. Board of Registration in Medicine, 444 Mass. 837, 843 (2005), citing Heacock v. Heacock, 402 Mass. 21, 23, n.2 (1988). The defendant, Harmon, does not distinguish between claim preclusion and issue preclusion and only cites to the broad principles of res judicata. Although Bank Defendants assert that they can establish each element of both issue and claim preclusion, the only principle applicable here is issue preclusion, and therefore, this court need not consider Bank Defendants’ claim preclusion argument.[9]
“The doctrine of issue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.” Heacock, 402 Mass. at 23, n.2. Before precluding a parly from relitigating an issue, a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the issue in the prior adjudication was identical to the issue in the current adjudication; and (3) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior.adjudication. Kobrin, 444 Mass, at 843. “Additionally, the issue decided in the prior ad *206 judication must have been essential to the earlier judgment.” Id. at 844, quoting Taper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134-35 (1998). “Once the initial criteria for the application of the doctrine of collateral estoppel are satisfied, the court must consider whether such application would be fair in a particular case.” In Re Brauer, 452 Mass. 56, 70 (2008). As the parly moving for dismissal on res judicata grounds, Defendants bear the burden of establishing these elements. Longval v. Commissioner of Correction, 448 Mass. 412, 416-17 (2007). This court will address each of these elements in turn.
1. Final Judgment on the Merits
The Housing Court’s Order for Judgment reads as follows: “1. Judgment enters for the plaintiff for possession only. 2. Execution for possession shall issue on August 15,2012. 3. The Defendant’s counterclaims are dismissed without prejudice.” See Bank Defs’ Supp’l Mem. of Law in Supp. of Motion to Dismiss, Exhibit 1, p. 5.
A dismissal “without prejudice” is not considered a decision on the merits for resjudicata purposes. Ogens v. Northern Indus. Chem. Co., 304 Mass. 401, 402-03 (1939); Chittenden Trust Co. v. Levitt, 26 Mass.App.Ct. 208, 212 (1988); Citibank v. Garabedian, 2010 Mass.App.Div. 89, 90 (2010). A dismissal without prejudice signifies that the court has not reached the substantive issues involved. Citibank, 2010 Mass.App.Div. at 90, citing Wright Mack Corp. v. Seaman-And-Wall Corp., 364 Mass 683, 694 (1974). ‘The very purpose of designating a dismissal as one without prejudice is ‘to prevent such dismissal from being a bar to further litigation, not, however, by limiting the effect of an actual adjudication on the merits, but rather by showing that no such adjudication was made.’ ” Id., quoting Ogens, 304 Mass. at 402-03.
Defendants’ argument fails to acknowledge the crucial fact that the Housing Court dismissed all of Farmer’s counterclaims without prejudice, including his title-based wrongful foreclosure and G.L.c. 93A claims. Bank Defs’ Supp. Mem. of Law, Exhibit 1, p. 5, n.3. The Housing Court did not render an adjudication on the merits of Farmer’s asserted counterclaims and entered a judgment only as to possession in favor of FNMA. See Joyce v. Morgan, 39 Mass.App.Ct. 465, 470 (1995) (though dealing with Mass.R.Civ.P. 41(a)(2), it also stands for the proposition that dismissals without prejudice do not operate as an adjudication on the merits). By dismissing Farmer’s counterclaims without prejudice, the Housing Court left the door open for him to raise those claims in a subsequent proceeding. See Pettinella v. Worcester, 355 Mass. 412, 415 (1969) (present suit was not barred where there was a dismissal without prejudice in a previous action); Chittenden Trust Co. v. Levitt, 26 Mass.App.Ct. 208, 212 (1988) (ajudgment of dismissal without prejudice leaves both claims and counterclaims open to resolution in later litigation). Defendants have not established that the Housing Court’s judgment concerning possession precludes a decision on the merits of claims Farmer raised in the Housing Court which were not decided there and which were specifically dismissed without prejudice.
Furthermore, in footnote 4 of Bank Defendants’ Supplemental Memorandum in Support of their Motion to Dismiss, Bank Defendants state that “A judgment for possession in this context is, thus, tantamount to a judgment that the purported owner holds valid, legal title pursuant to the foreclosure sale.” In this court’s view, this is a concession by Bank Defendants that the Housing Court did not render a valid final judgment on the issue of title and an acknowledgment that the Housing Court, as it stated, limited its Order for Judgment to possession only. Where the Housing Court specifically entered judgment “for possession only” and dismissed without prejudice Farmer’s claim for wrongful foreclosure and all his other counterclaims, Farmer cannot now be barred from asserting them in the Superior Court.
2. Identity of the Cause of Action
This court is not convinced that there is sufficient identity of the cause of actions in the Housing Court and the instant Superior Court action. Farmer is now claiming wrongful foreclosure based on the invalidity of FNMA’s title and other claims, which all stem from that allegedly wrongful foreclosure, including a violation of G.L.c. 93A. Defendants argue that Farmer already litigated, and lost, questions concerning the validity of FNMA’s title during the summary process action, and as such, the title-related claims that he now asserts are barred by issue preclusion.
Although Farmer asserted a wrongful foreclosure claim based on invalidity of title in the Summary Process action, the Housing Court only considered and entered a judgment as to possession. This court acknowledges that there is some interplay between a title-based wrongful foreclosure claim and a right of possession claim. See generally Bank of New York, 460 Mass. 327 (2011) (a defendant in a post-foreclosure summary process action may challenge in the Housing Court a plaintiffs right to possession by putting legal title in issue). However, as a matter of law, a title-based claim of wrongful foreclosure and right to possession are two separate and distinct claims. In addition, although the two claims may share the common element of validity of title, this court’s research has not revealed, and Defendants have not cited to, any res judicata case in which one part of a judgment was final and one part was dismissed without prejudice, where both parts bear on the exact same issue. Instead, Defendants erroneously, in this court’s evaluation, rely on Solomont v. Howe Real Estate Advisors, LLC, No. 11 Mise. 448092 (Mass. Land Ct. September 28, 2011), and Sheehan Constr. Co. v. Dudley, 299 Mass. 51 (1937), in which questions of title were previously litigated in summary process actions, and where there *207 was no dismissal without prejudice of a title-based wrongful foreclosure claim. See Bank Defs’ Supp’l Mem. of Law in Supp. of Motion to Dismiss, pp. 1-7. In fact, Solomont specifically states that “the determination of title in a prior proceeding will, in appropriate cases, bar a new litigation attempt to adjudicate title again in a fresh action.” Solomont, No. 11 Mise. 448092 (Mass. Land Ct. September 28, 2011) (emphasis added). This court declines to attribute the Housing Court’s decision, “only as to possession,” to bar Farmer’s title-related wrongful foreclosure claim which was never litigated below and was, in fact, dismissed without prejudice. Therefore, this court concludes that res judicata is inapplicable, as there is not sufficient identity of the issues as the basis for Farmer’s counterclaims were never considered on the merits at the Housing Court.
3. Identity of the Parties
Given this court’s determination as to two of the necessary elements of issue preclusion, it is not necessary for this court to determine the accuracy of Defendants’ assertions that they are all in privity with FNMA.[10]
4. Fairness to the Parties
The party against whom issue preclusion is being asserted must have had a “full and fair opportunity to litigate the issue in the first action.” Pierce v. Morrison Mahoney, 452 Mass. 718, 730 (2008), quoting Matter of Goldstone, 445 Mass. 551, 559 (2005).[11] “Ultimately, fairness[12] is the ‘decisive consideration’ in determining whether to apply issue preclusion.” Id., quoting Goldstone, supra. As such, a judge should be given wide discretion in determining whether applying collateral estoppel would be fair to a party. Id. at 731, citing Bar Counsel v. Board of Bar Overseers, 420 Mass. 6, 10-11 (1995) (the fact-finder is afforded wide discretion in deciding whether collateral estoppel should be applied in a particular case).
Notwithstanding that Defendants failed to prove two of the necessary elements of issue preclusion, in this court’s view it would be unfair and a miscarriage of justice not to permit Farmer to assert his claims. Farmer was a pro se[13] defendant in the Housing Court who, on his own initiative, affirmatively raised a wrongful foreclosure counterclaim and a G.L.c. 93A counterclaim, which were not litigated in the Housing Court and were specifically dismissed without prejudice. Where there are interrelated claims, and where one is final (right to possession) and one is not (wrongful foreclosure and other counterclaims), it is unfair to give preclusive effect to any factual determination that bears on both the final decision, possession, and the one, wrongful foreclosure, not yet litigated on the merits. Applying issue preclusion in this case would inappropriately foreclose Farmer any opportunity to obtain consideration of his substantive claims, and would unfairly deprive him of his day in court.
Therefore, based on the absence of a final judgment rendered on the merits, the lack of identity of the issues and unfairness to Farmer, this court cannot apply res judicata to bar Farmer’s instant action.
B. Count III: G.L.c. 93A
Defendants argue that they are entitled to summary judgment on Farmer’s Consumer Protection Act claims because Farmer failed to serve Defendants the proper demand for relief as required by G.L.c. 93A, §9(3). See Bank Defs’ Supp’l Mem. of Law in Supp. of Motion to Dismiss, pp. 16-17. After consideration, this court concludes that the pleadings filed by Farmer in Housing Court satisfied the requirements of G.L.c. 93A, §9(3), where they constituted fair notice of Farmer’s 93A claim and enabled Defendants to make a reasonable tender of settlement.
Pursuant to G.L.c. 93A, §2(a), “(u)nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful.” Under G.L.c. 93A, §9, a private cause of action exists for consumers who suffer injury from unfair or deceptive acts or practices. Casavant v. Norwegian Cruise Line., 460 Mass. 500, 505 (2011). General Laws c. 93A, §9(3), provides that
[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner.
The statute does not require that the “written demand for relief’ be in the form of a letter, though that is certainly the usual practice, at least in this court’s experience.
One function of the demand for relief “is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct.” Casavant, 460 Mass, at 505, quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975). The other function of the demand “is to operate as a control on the amount of damages which the complainant can ultimately recover if he proves his case.” Id.
It is therefore essential that the complainant define the injury suffered and the relief demanded in a manner that provides the prospective defendant with an opportunity to review the facts and the law involved to see if the requested relief should be *208 granted or denied and enables him to make a reasonable tender of settlement.
Id. (internal citations and quotations omitted).
Within Farmer’s Answer to FNMA’s Complaint in Housing Court (“the Answer”), Farmer made several claims which, when taken together, constitute a sufficient demand for relief under G.L.c. 93A, §9(3). In his Answer, Farmer indicated that FNMA does not have superior right to possession, and that, based on principles of equity and fairness, it is unfair to evict him. See Plaintiffs Supp’l Aff. in Supp. of the Motion for Summary Judgment, Exhibit A, pp. 5-6. Farmer also stated that FNMA interfered with Farmer’s right to enjoy his home. Id. at 8. Most notably, under the heading “Violation of the Consumer Protection Law,” Farmer clearly indicated that FNMA “is subject to G.L.c. 93A, and each of the acts stated in this Answer/Counterclaim was unfair and/or deceptive,” and that this “pleading is a demand for a reasonable settlement offer.” Id. at 9. Farmer stated that it was based on the wrongful foreclosure that FNMA acted unfairly and deceptively. Id. Farmer goes on to state that ‘Therefore, under G.L.c. 93A, I am entitled to statutory damages for each violation, or actual damages (doubled or trebled because the landlord’s conduct was willful and knowing), whichever is greater.” Id. Farmer also indicated that based on FNMA’s conduct, he is entitled to keep possession of his home. Id. at 11.
Farmer’s Answer filed in the Housing Court satisfies the requirements of a “written demand for relief’ under General Laws c. 93A, §9(3). The claimant is clearly identified; the Answer describes the allegedly unfair and deceptive acts by alluding to FNMA’s lack of superior right of possession, the unfair eviction and wrongful foreclosure. Farmer adequately described his injuries and relief sought by explaining that Defendants deprived him of his right to enjoy his home; he also requested a reasonable settlement offer and/or possession of his home. In addition, by indicating that his claims related to the Consumer Protection Act, Farmer made Defendants aware of the exact nature of the demand. See Cassano v. Gogos, 20 Mass.App.Ct. 348, 350 (1985) (in order to qualify as a written demand under c. 93A, the demand must... define the injury suffered and the relief sought, as well as refer to the nature of the claim as one under the consumer protection act). Farmer’s assertion of these claims in the Answer he filed in Housing Court is clearly identifiable as a 93A demand and should be treated as such.
Further, Farmer satisfied the time requirement outlined in the statute. Farmer’s Answer was delivered to FNMA on December 19, 2011.[14] Plaintiffs Supp’l Aff. in Support of the Motion for Summary Judgment, Exhibit A, p. 12. Clearly, the Answer, constituting a “written demand for relief’ was received more than thirty days prior to the Superior Court action, giving Defendants ample time to respond to Farmer’s 93A claims. From that point forward, Defendants had knowledge that if they did not respond and pursue settlement, Plaintiff could potentially pursue an action in Superior Court on these claims. This point is further bolstered by the fact that the Housing Court judge dismissed Farmer’s 93A counterclaim without prejudice. In sum, Farmer’s Answer satisfies the important functions of the “demand for relief’ requirement, to give notice of the claims and to encourage negotiation and settlement of those claims.
That Farmer’s demand for relief did not take the form of a letter has no bearing on the satisfaction of G.L.c. 93A, §9(3). The parties have not provided, and this court’s research has not revealed, any reported decision that has addressed whether or not an answer filed in a prior suit constitutes a sufficient demand for relief under G.L.c. 93A, §9(3) in a subsequent suit. In such situations, we look to the relevant words of the statute itself for guidance. Richards v. Arteva Specialties S.A.R.L., 66 Mass.App.Ct. 726, 731 (2006), citing Martha’s Vineyard Land Bank Comm’n v. Assessors of W. Tisbury, 62 Mass.App.Ct. 25, 27-28 (2000). The statute reads in pertinent part that “a written demand for relief . . . shall be mailed or delivered to any prospective respondent.” G.L.c. 93A, §9(3). Although historically 93A demands are typically sent in letter form, nothing in the statute requires a demand to be sent as a letter and this court cannot read this requirement into the statute. See Richards, 66 Mass.App.Ct. at 733 (refusing to read in words that are not included in the provisions of 93A, §9(3)); see also Massachusetts Broken Stone Co. v. Town of Weston, 430 Mass. 637, 640 (2000); Dube v. Contributory Retirement Appeal Bd., 50 Mass.App.Ct. 21, 23-24 (2000). To construe 93A in such a way would deny a meritorious claim because of lack of a formal letter, when the statutory purposes are fully satisfied, would be contrary to the legislative purpose in enacting 93A, and would be putting form over substance. See Richards, 66 Mass.App.Ct. at 730, quoting Baldassari v. Public Fin. Trust, 369 Mass. 33, 41-42 (1975) (in enacting G.L.c. 93A the legislature intended to create new substantive rights and procedural devices substantially broadening the vindication of consumers’ rights; as such, “technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice” which “includes a reading of the demand for relief requirement”) .[15] The mere fact that the Answer satisfying the requirements of c. 93’s “written demand for relief’ was not in the form of a formal letter does not bar Farmer from seeking relief under this statute, particularly when the Answer in Housing Court achieves the underlying purposes of G.L.c. 93A, §9(3). Therefore, in view of the adequacy of his “written demand for relief,” this court allows consideration of Farmer’s 93 A claims in the instant action. Accordingly, Defendants’ motions to dismiss Farmer’s chapter 93A claim, treated as a Rule 56 motion, is denied.
*209 C. Counts I, II, and V
At this stage in the case, the court must accept Farmer’s factual allegations as true. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). In so doing, this court notes that Farmer has asserted facts sufficient to state a claim upon which relief can be granted. Specifically, the facts, as alleged by Farmer, are sufficient to satisfy the elements of Counts I, II, and V. As such, the defendants’ motions to dismiss these counts are DENIED.
II. FARMER’S MOTION FOR PARTIAL SUMMARY JUDGMENT/ DEFENDANTS’ MOTIONS TO DISMISS ON COUNTS IV, VI, AND VII
Analysis of Farmer’s motion for partial summary judgment on these counts and the defendants’ motions to dismiss, treated as Rule 56 motions, require an evaluation of the defendants’ foreclosure process and the chain of title to Mr. Farmer’s property.
A. Assignment by MERS to Countrywide
Defendants claim that when the foreclosure sale occurred in August 2011, BAC held the mortgage. BAC, however, could only hold the mortgage if both alleged assignments of the mortgage were valid. This court now considers the validity of the first assignment of Farmer’s mortgage from MERS, as Omega’s nominee, to Countrywide.
The instant mortgage includes in the “Definitions” section that “MERS is the mortgagee under this Security Instrument.” Farmer is the Borrower and the Lender is Omega Mortgage Corporation. Significantly, on page 3, the mortgage states:
TRANSFER OF RIGHTS IN THE PROPERTY: This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower’s covenants and agreements under this Security instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . .
(Emphasis added.) That same section also states:
TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in his Security Instrument as the Property. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender’s successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
(Emphasis added.)
The question then becomes: what does it mean that MERS’s capacity as mortgagee is “solely as nominee for Lender (Omega) and (its) successors and assigns?[16]
Black’s Law Dictionary (9th ed. 2009) defines “nominee” as “2. A person designated to act in place of another, usu. in a very limited way. 3. A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others.[17]” Furthermore, as developed in the limited case law on this issue:
[T]he word “nominee” ordinarily indicates one designated to act for another as his/her representative in a rather limited sense [Schuh Trading Co. v. Commissioner of Internal Revenue, 95 F.2d 404, 411 (7th Cir. 1938)]. In its commonly accepted meaning, the word “nominee” connotes the delegation of authority to the nominee in a representative capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him/her [Cisco v. Van Lew, 60 Cal.App.2d 575, 583-84 (1943); Middle East Trading & Marine Service, Inc. v. Mercantile Finance Corp.,49 Ill.App.3d 222 (1977); see Lee v. Ravanis, 349 Mass. 742, 745 (1965)].
Kolakowski v. Finney, 1983 Mass.App. Div. 360, 363-64 (1983).
This question, what does it mean to be “mortgagee solely as nominee of lender,” was specifically reserved in Eaton v. Federal National Mortgage Association, 462 Mass. 569, 590 fn 29 (2012). Specifically, in fn 29 the SJC stated:
As noted at the outset of this opinion, the mortgage identifies MERS as mortgagee, but one that acts as the “nominee” of the lender. It is not clear what “nominee” means in this context, but the use of the word may have some bearing on the agency question. We express no opinion whether MERS or Green Tree was acting as agent of the note holder or with the note holder’s authority at the time of the foreclosure sale. Eaton is entitled to pursue discovery on this issue in connection with her Superior Court action.
Given the limited appellate case law in Massachusetts, this court reasonably infers that “nominee” in this context means that MERS can only act in its nominee capacity when it acts as the agent of Omega.[18]
Accepting that, in Massachusetts, MERS as nominee of Omega, can only validly act as agent of, or at the direction of, Omega, it is incumbent on the defendants asserting the validity of MERS’s 2007 assign *210 ment of its interest in the mortgage[19] to show Omega’s direction to MERS. Defendants have not offered any evidence that the “Lender,” Omega, gave any direction to its “nominee” MERS concerning this assignment.
This plaintiff can contest an assignment that is “void.” Culhane v. Aurora Loan Services of Nebraska, 2013 WL 563374 (1st Cir.). “If an assignment is void, then the mortgage was never assigned to the assignee, and the assignee does not hold the legal title necessary for it to be able to foreclose.” Abate v. Fremont Investment & Loan, 2012 WL 6115613 (Mass. Land Court 2012), citing Butler v. Deutsche Bank Trust Co. Americas, 2012 WL 3518560 (D.Mass. Aug. 14, 2012). Absent any showing of agency or direction to MERS by Omega, the purported assignment by MERS to Countrywide is void.[20] Consequently, where the assignment to Countrywide is void, Defendants have not demonstrated any other way in which Countrywide was vested with title to the mortgage, Countrywide had no interest in the property to convey to BAC in 2010. Accordingly, the second assignment is also void. As such, where Defendants have provided no evidence of any valid assignment, MERS, as nominee for Omega, remains the mortgagee.
B. Compliance with Statutory Notices
Alternatively, if this court is incorrect on the novel (not yet decided by any appellate authority in Massachusetts) issue of whether MERS as nominee cannot act except at the direction of Omega, Defendants must still show compliance with the statutory foreclosure notice requirements of G.L.c. 244, §14 and, if applicable, G.L.c. 244, §35A.
1. Statutory Notice Pursuant to G.L.c. 244, §35A.
Defendants agreed at the March 14, 2013 hearing that, prior to the August 2011 foreclosure sale, Farmer was not provided any notice pursuant to G.L.c. 244, §35A. The defendants claim that notice pursuant to G.L.c. 244, §35A was not required, as they claim Farmer was already in default and his mortgage had already been accelerated prior to the May 1, 2008 effective date of G.L.c. 244, §35A. The Bank Defendants, however, have not presented any evidence that Farmer defaulted at all, let alone evidence that he defaulted prior to May 1, 2008.[21]
With regard to acceleration of the mortgage, Farmer’s mortgage states, at p. 12:
NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:
¶22 Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant agreement in this Security Instrument. . .
If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of notice of sale to Borrower ... in the manner provided by Applicable Law . . .
The mortgage defines “Lender” as Omega Mortgage Corp. No evidence was offered that Omega itself, or any entity on its behalf, ever sent Farmer the letter Omega was required to send in order to accelerate the loan pursuant to ¶22 of the mortgage. Accordingly, Farmer’s mortgage was never properly accelerated in accordance with the specific terms of his mortgage.
Defendants rely on two notices of acceleration, Exhibits E and F to Bank Defendants’ Supplemental Memorandum of Law in Support of their Motion to Dismiss. The first, Exhibit E, is dated April 16, 2007 and is from Countrywide Home Loans (“Countrywide”) . In this letter, Countrywide Home Loans Servicing, LP asserts that it “services” the home loan described above on behalf of the holder of the promissory note (the “Noteholder”). No evidence has been offered as to the truthfulness of this statement as of April 16, 2007. It is undisputed that MERS never held the Note, and no evidence has been offered that Omega ever assigned the Note. The second, Exhibit F, is a letter dated June 20, 2007 from Harmon, on behalf of its client, Countrywide Home Loans, Inc. Where neither Exhibit E nor Exhibit F is sent by or on behalf of Omega, and no evidence has been offered to demonstrate that Countrywide was, in fact, then Omega’s agent, Defendants have failed to establish that Farmer’s mortgage was accelerated in accordance with ¶22 of the mortgage.
However, this court goes on to consider whether the mortgage could properly have been accelerated in any way, other than by strict compliance with the mortgage terms. Exhibit F, the second acceleration notice, which was allegedly sent to Farmer by Harmon, states in pertinent part:
This office has been retained by Countrywide Home Loans, Inc. to foreclose on a mortgage from Dennis E. Farmer, in the original principal amount of $367,000.00 dated January 4, 2006, which mortgage is currently held by Countrywide Home Loans, Inc., under Power of Sale and by entry for breach of the conditions of the loan documents. You are further notified that the note is hereby accelerated and the entire balance is due and payable forthwith and without further notice. Even though the note has been accelerated, you may still have the right to reinstate the loan. If so, and if you desire to reinstate the loan, you will need to pay an amount of money sufficient to bring the loan fully current.
This letter, from Countrywide’s counsel, is dated June 20, 2007. However, on June 20, 2007, Countrywide had not yet received any assignment of Farmer’s mortgage, and no evidence has been provided that as of June 20, 2007 Countrywide had any legal relationship to Farmer’s mortgage, or anything else related to this properly. For Countrywide to have legally accelerated the loan as of that date, it must have been the then-mortgagee or, at the very least, be able to demonstrate that it was acting at the direction of Omega *211 or the then-mortgagee. No such evidence has been offered. As of those dates, April 16, 2007 and June 20, 2007, Countrywide was not then the mortgagee. Even if the assignment signed and dated September 12, 2008 was effective as of September 12, 2008, it cannot have been effective in April or June 2007 for purposes of allowing Countrywide, when it then had no interest in Farmer’s mortgage, to legally accelerate Farmer’s mortgage. U.S. Bank Nat’l Assoc, v. Ibanez, 458 Mass. 637, 653-54 (2011).
Where the foreclosure sale allegedly occurred in August 2011, after G.L.c. 244, §35Awas effective, and no evidence has been provided either that Farmer was in default before May 1, 2008, or that Farmer’s mortgage was properly accelerated prior to May 1, 2008, Farmer was legally entitled to notice of foreclosure pursuant to c. 244, §35A. Defendants’ failure to furnish written notice to Farmer pursuant to G.L.c. 244, §35A voids the foreclosure.[22]
2. Statutory Notice Pursuant to G.L.c. 244, §14.
Harmon’s counsel has now provided what it claims to be the required statutory notice pursuant to G.L.c. 244, §14. Initially, in its Supplemental Memorandum in Support of its Motion to Dismiss, Harmon claimed that the c. 244, § 14 notice was a letter to Farmer dated September 15,2010.[23] Despite three hearings, and all of the defendants filing numerous memos in support of their motions to dismiss and supplemental memos in opposition to Plaintiffs Motion for Partial Summary Judgment, counsel for Harmon announced at the third hearing that he had the c. 244, §14 statutory notice but was not providing it. Counsel for the Bank Defendants then sought, and were granted, time to discuss with their clients whether the applicable c. 244, §14 notice should be provided. Then, on March 19, 2013, Harmon’s counsel provided an affidavit[24] of Paolo Franzese, which revealed that the c. 244, §14 notice on which Defendants rely are three unsigned letters dated July 25, 2011 from Harmon to Farmer. They are entitled:
1. Notice of Intention to Foreclose Mortgage and of Deficiency after Foreclosure of Mortgage (without any certified mail number);
2. Notice of Mortgage Foreclosure Sale with Certified Article Number 7196 9008 9111 0280 9593;
3. Notice of Mortgage Foreclosure Sale with Certified Article Number 7196 9008 9111 0280 9609;
Only the first, Notice of Intention to Foreclose, states who holds the mortgage in the body of the letter: Bank of America NA as successor by merger to BAC Home Loans Servicing.[25] No mention of the word “mortgagee” is included in this notice or the others. The return receipts with alleged signatures by plaintiff are also provided.
Attorney Franzese states in this affidavit that “this office also complied with Chapter 244, §14 of the Massachusetts General Laws, as amended, by mailing the required notices certified mail, receipt requested.” He then specifies that the c. 244, §14 notice was mailed to Farmer in accord with the statute and specifically references the notices attached as Ex. C, all dated July 25, 2011. Those unsigned notices reference BOA’s intention to foreclose by sale “on or after August 19, 2011.” Although the Notice of Mortgage Foreclosure Sale states that “enclosed is a copy of the Notice of Mortgagee’s Sale of Real Estate,” no document with that specific title is contained in Ex. C. The Notice of Intention to Foreclose Mortgage and of Deficiency after Foreclosure of Mortgage states:
You are hereby notified, in accordance with the statute, of the intention of Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP, on or after August 19, 2011, to foreclose by sale under power of sale for breach of conditions, the mortgage held by it on property situated at 87 Maple Street, Dorchester (Boston), Massachusetts, said mortgage dated January4,2006, and recorded with the Suffolk County Registry of Deeds at Book 38829, Page 9, said mortgage given to secure a note signed by you, for the whole or part of which you may be liable to Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP in case of deficiency in the proceeds of the foreclosure sale.
Much of Harmon’s paperwork with relation to Farmer’s mortgage and property is completely inaccurate. Some of these errors are included in Farmer’s Statement of Material Facts incorporating Defendants’ Responses at Nos. 23-26. Even though Harmon sent Farmer a letter dated January 6, 2010 on behalf of Countrywide, stating that plaintiffs home “has been sold at a foreclosure auction” and that “the new owner is FNMA,” Harmon and the Bank Defendants now agree that both of those statements were inaccurate. Despite these inaccuracies, however, Farmer was never notified that no such foreclosure sale had actually occurred in 2010 or whether there was a new owner.
More fundamentally, there is no reference included in these notices identifying the correct mortgagee. See Ibanez, 458 Mass, at 648. No defendant has provided any documentaiy evidence that in July and August of 2011 BOA was then the mortgagee. As discussed above, because the purported assignment from MERS to Countrywide was void, so was the subsequent purported assignment from Countrywide to BAC. Furthermore, even if these assignments had been valid, there is no evidence before the court as to when BOA become the successor to BAC, through which it claims to have held the mortgage to the property at the time of the foreclosure sale.
The statutory notice required by c. 244, §14 requires that the mortgagee be correctly identified. No such accurate notice was provided to Farmer by Harmon; their letter of July 15, 2011 did not correctly *212 identify the then-mortgagee. Accordingly, the foreclosure is void.[26] Id.
C. Trespass, Quiet Title, and Declaratory Judgment
1. Trespass
Farmer alleges that Defendants, in the process of improperly foreclosing on his mortgage, came upon his land without his permission, and as such, committed a trespass against his property. ‘To support an action of trespass ... it is necessary to prove the actual possession of the plaintiff, and an illegal entry by the defendant.” New England Box Co. v. C&R Constr. Co., 313 Mass. 696, 707 (1943) (internal citations and quotations omitted). Because, as discussed above, the foreclosure of Farmer’s mortgage is void, Farmer was still in actual and lawful possession of his home and property at the time of the foreclosure sale and subsequent eviction and removal of his personal property. As such, any of the defendants who, at these times, entered his property or directed others to, may be liable to Farmer for trespass.
In the Statement of Material Facts, Farmer alleges that, after the summaiy process decision, Harmon arranged for a constable and mover to remove Farmer’s personal properly from the residence, and that the constable and mover did come onto the property to do so. In the body of his Motion for Partial Summaiy Judgment, Farmer also asserts that the defendants “twice [made] a peaceable entry upon the plaintiffs property to foreclose the mortgage . . .’’In response to these allegations, Bank Defendants consistently deny that they ever entered the property or instructed the constable and mover to do so. Harmon, however, admits that it instructed the constable and mover to enter Farmer’s property and that, as attorney for BOA, it entered the property to conduct the foreclosure sale.[27] Accordingly, there is no dispute that Harmon trespassed upon Farmer’s property, but there is a dispute of facts as to whether Bank Defendants did as well. As such, this court allows Farmer’s request for summary judgment on this count as to Harmon, but denies it, without prejudice, as to the Bank Defendants.
2. Quiet Title and Declaratory Judgment
Mr. Farmer contends that Defendants’ actions in recording the MERS assignment, the Countrywide assignment, and the foreclosure deed naming FNMA as owner have obfuscated the title to his properly. Pursuant to G.L.c. 240, §6, Farmer asks this court to purge the title of uncertainly and “to make such findings as are necessary to quiet or establish the title” to the property.
As discussed above, this court has found that the assignments were improper and that the foreclosure was void.[28] Furthermore, this court also found that the mortgage was not properly accelerated according to the terms of the mortgage, and that the notices provided to Farmer did not comply with the statutory requirements of G.L.c. 244, §35Aand G.L.c. 244, §14. As such, this court allows Farmer’s motion as to Count VI, quieting title in favor of Farmer, finding that Farmer’s title to the property is superior to that of any of the defendants. Furthermore, because Farmer’s request for declaratory judgment relies on the same facts as the count to quiet title, Farmer’s motion as to Count VII is also allowed.[29]
ORDER
For the reasons stated above, this court orders that Counts I, II, and v. of Defendants’ Motions to Dismiss (papers 7 and 22) be DENIED. Furthermore, to the extent that Defendants’ Motions to Dismiss were treated as motions for summaiy judgment on the issue of res judicata and on Count III, this court orders that Defendants’ motions also be DENIED. Lastly, this court orders that Farmer’s Motion for Partial Sum-maiy Judgment, be ALLOWED IN PART and DENIED IN PART. Judgment shall enter for Farmer as to defendants FNMA, Countrywide and MERS on Count VI: Action to Quiet or Establish Title to Land and Count VII: Declaratory Judgment. As to Count IV: Trespass, judgment shall enter for Farmer as to Harmon, but is denied without prejudice as to FNMA, Countrywide, and MERS.
As to Counts VI and VII, judgment is to enter that plaintiff Dennis Farmer holds a superior interest in the title to the property at 87 Maple Street, Boston, MA 02121 over any interest claimed by defendants FNMA, Countrywide and/or MERS.
As Ordered at the last hearing, FNMA is not to convey, sell, transfer or encumber the property at 87 Maple Street, Boston, MA 02121.[30]

“Bank Defendants” are Federal National Mortgage Associates (“FNMA”), Countrywide Home Loans, Inc. (“Countrywide”) and Mortgage Electronic Registration Systems, Inc. (“MERS”). Bank of America (“BOA”) and BAC were added in the Amended Complaint and are not parties to these motions.

During the pendency of these motions, this court, on reconsideration, allowed Farmer’s Motion to Amend the Complaint. Accordingly, these motions are decided relative to the Amended Complaint.

Count numbers have been amended to correspond with the counts as listed in the Amended Verified Complaint.

Although Defendants have filed motions to dismiss, the court notes that they have submitted, and rely upon, extrinsic documents to support their assertion of res judicata and to counter Farmer’s 93A claim (Count III). Accordingly, as previously discussed with the parties, the court will treat these motions to dismiss as motions for partial summary judgment with regard to these two issues. Counts I, II, and V, however, will be assessed in light of the motion to dismiss standard. As for the remaining counts (IV, VI and VII), they will be analyzed according to the summaiy judgment standard, as they are the subject of Farmer’s motion for partial summaiy judgment.

To the extent that Harmon relies on the “litigation privilege” to avoid liability on Farmer’s claims, Harmon has not cited to any appellate authority necessitating recognition of this privilege in the current context. This court notes that the actions for which Harmon is being sued were not done in preparation for litigation, but rather were undertaken in the *213 course of representing its clients in various transactions. See Sriberg v. Raymond, 370 Mass. 105, 109 (1976). Accordingly, to the extent that Harmon relies on this privilege in support of its motion to dismiss, and in its opposition to Farmer’s motion for partial summary judgment, this privilege is not available to Harmon.

This court considers that these defendants, having in effect waived a resjudicata argument, are not able to avail themselves of a preclusion argument against Farmer. Res judicata claims are affirmative defenses. Mass.R.Civ.P. 8(c)(1). Such defenses are waived when they are not raised in the first responsive pleading. Aronovitz v. Fafard, 78 Mass.App.Ct. 1, 8 (2010), citing Sharon v. Newton, 437 Mass. 99, 102 (2002) (‘The omission of an affirmative defense from an answer generally constitutes a waiver of that defense”); Leahy v. Local 1526, Am. Fed. of St., County, & Mun. Emp., 399 Mass. 341, 351 (1987) (defendant was required to raise the affirmative defense of resjudicata in its answer, failure to do so constitutes a waiver of that defense).
Bank Defendants’ initial responsive pleading, the Defendants’ Memorandum of Law in Support of Defendants’ Motion to Dismiss, filed on December 7, 2012, failed to raise a resjudicata defense. Instead, Bank Defendants solely relied on BAC Home Loans Servicing, LP v. Farmer, No.lO-MISC-430698 (Mass. Land Ct. Nov. 18, 2010), stating “Plaintiffs Complaint is no more than an attempt to re-litigate the validity of the Bank of America foreclosure, which the Land Court has already ordered.” Memo, of Law in Supp. of Bank Defs’ Motion to Dismiss, p. 5. The Defendants’ vague reference to an attempt to relitigate the Land Court’s judgment is not enough to constitute an affirmative pleading of the resjudi-cata defense. See Leahy v. Local 1526, Am. Fed. of St, County & Mun. Emp., 399 Mass. 341, 352 (1987), citing Lewis v. RusseiL 304 Mass. 41, 44 (1939) (“It is not enough that the defence [sic] be suggested or hinted at, or even that the plaintiff be reasonably caused to expect that it will be asserted”). Subsequently, on February 14, 2013, Bank Defendants filed an Opposition to Plaintiffs Motion for Partial Summary Judgment. In this Opposition, Bank Defendants make the same reference to an attempt to relitigate the Land Court’s decision. See Bank Defs’ Opp. to Plaintiffs Motion for Partial Summary Judgment, p. 5. It was not until March 12, 2013, when the Bank Defendants filed their Supplemental Memoranda of Law in Support of the Motion to Dismiss that they raised the theory of res judicata and relied on the Housing Court’s Summary Process action in an attempt to bar Farmer’s action. Bank Defs’ Supp’l Memo of Law In Support of Motion to Dismiss, pp. 1-10.
This waiver principle also applies to Harmon’s Motion to Dismiss filed on December 10,2012, which simply stated that “It should be noted that the claims made in Counts v. and VI were litigated in Federal National Mortgage Association v. Dennis Farmer et al., C.A. No. 11H84SP004847, in Boston Housing Court before Judge Winik and Judge Winik decided that the foreclosure was proper." Defs Mem. in Supp. of Motion to Dismiss, p. 7. On February 14, 2013, Harmon filed an Opposition to Plaintiffs Motion for Partial Summary Judgment. In that Opposition, Harmon mentioned the Land Court’s decision, but did not reference the Housing Court and made no mention of res judicata. Defs Opp. to Plaintiffs Motion for Partial Summary Judgment, p. 5. In addition, Harmon’s Supplemental Memorandum in Support of its Motion to Dismiss, dated March 4, 2013, makes no mention of resjudicata. Harmon’s Memorandum in Support of its Motion to Dismiss the Amended Verified Complaint, filed March 12, 2013, was the first paper filed by Defendant Harmon that mentioned resjudicata See Def. Harmon’s Memo, in Supp. of Motion to Dismiss the Amended Verified Complaint, pp. 5-9. Defendants’ actions support a decision that they waived a resjudicata defense. However, in addition to this determination, this court will also address the merits of the res judicata argument.

Harmon, having asserted this legal argument on behalf of FNMA at the Housing Court, is clearly in privity with FNMA. Further, for the purposes of the present analysis, this court accepts the assertion of MERS and Countrywide that they are in privity with FNMA.

When Harmon, on behalf of FNMA, made this claim, the SJC had already issued Bank of New York v. Bailey, 460 Mass. 327, 332 (2011), which explicitly authorized the Housing Court to “consider the former homeowner’s defense that the plaintiffs title is invalid because the foreclosure was not conducted strictly according to the statute.”

However, although the underlying purposes of claim and issue preclusion are different, because the required elements for each mirror one another, an analysis based on the theory of claim preclusion would lead to the same result, that res judicata does not bar Farmer’s claims.

Accepting that assertion, this court’s decision concerning judicial estoppel applies equally to Harmon and the Bank Defendants.

Pierce v. Morrison Mahoney j]-le cases cited deal with offensive use of issue preclusion; however, principles of fairness apply in this context as well, as defensive use of issue preclusion could potentially have a similar detrimental impact.

As the SJC stated In the Matter of Brauer, 452 Mass. 56, 70 (2008):
Once the initial criteria for application of the doctrine of collateral estoppel have been satisfied, we consider whether such application would be “fair” in a particular case. See Matter of Cohen, 435 Mass. 7, 16-17 (2001), and cases cited. See also Bar Counsel v. Board of Bar Overseers, 420 Mass. 6, 11-12 (1995). In making that determination, “courts generally ask whether (1) the party in whose favor the estoppel would operate could have joined the original action, (2) the party against whom it would operate had an adequate incentive to defend the original action vigorously, (3) ‘the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant,’ and (4) ‘the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.’ ” Haran v. Board of Registration in Med., 398 Mass. 571, 577-78 (1986), quoting Parkkme Hosiery v. Shore, 439 U.S. 322, 329-31 (1979). See Matter of Cohen, supra at 17.
While “fairness” is generally only considered if all elements of issue preclusion are satisfied, which they are not in this case, this court also addresses the fairness issue here.

Farmer’s pro se status in Housing Court has no effect on, and is not dispositive as to, the court’s determination of unfairness. Cf. In the Matter of David P. Brauer, 452 Mass. 56, 71 (2008) (fact-finder has wide discretion in deciding whether to apply collateral estoppel; however, adequacy of assistance of counsel is an unavailing argument).

Defendants cite to multiple cases for the proposition that a demand letter sent to one defendant was not effective against another and that a separate demand letter must be sent to each defendant. However, the written demand for relief made to FNMA is attributable to all defendants in the instant action based on their claim of privity with FNMA. See Harmon’s Mem. In Support of Motion to Dismiss the Amended Verified Complaint, p. 8 (“the current parties are the same or in privity with those who were parties to the prior Summary Process action”); Bank Defs’ Supp’l Mem. of Law in Supp. of Motion to Dismiss, p. 5 (“Countrywide and MERS are in privity with FNMA because they are predecessors in interest to FNMA”). Defendants Harmon and FNMA were aware of the *214 93A claim asserted in the Answer, and, based on principles of privity that Defendants currently claim to exist between FNMA, the remaining Bank Defendants and Harmon, knowledge of the demand filed on December 19, 2011 require that Harmon and all Bank Defendants be judicially estopped from arguing otherwise.

Richards and Bcddassari deal with class action lawsuits, but the general principles regarding 93A are equally applicable in this context.

No evidence was provided as to any successors/assigns of Omega.

The Restatement on Property does not define “nominee for lender,” but uses the term nominee in describing the facts of various cases in the Case Citations of Restatement (Third) of Properly (Mortgages) §5.4 (1997), in the Illustrations of Restatement (Third) of Property (Wills & Don. Trans.) §10.2 (2003), and in the Illustrations of Restatement (Third) of Property (Mortgages) §5.1 (1997).

This court acknowledges that other courts and Superior Court justices have decided this issue to the contrary, but these decisions, including the First Circuit Culhane decision, which the Bank Defendants so arduously encourage the court to follow on this issue, are not binding. Rather, this court accepts that the Supreme Judicial Court, which was clearly aware of this trend in decisions, expressed a reticence to embrace this reasoning. This court interprets Footnote 29 in Eaton to indicate that the Supreme Judicial Court finds this to be an issue worthy of analysis and careful consideration.

Although the assignment dated September 12, 2008 stated MERS “assigns said mortgage and the note and claim secured thereby . . . it is undisputed that MERS never owned the note. It is also unclear what is meant by “claim.” The same inaccurate language is contained in the second assignment from Countrywide to BAC Home Loans Servicing. Additionally, the first assignment from MERS to Countrywide was signed on September 12, 2008 but states: “Assignment effective as of June 20, 2007.” Where the important work of the Registry is to accurately record the tracking of title, this court does not consider these substantive inaccuracies to be simple surplusage. However, whether this incorrect language and/or backdating of the first assignment is mere surplusage, as defendants claim, or voids the assignment altogether, need not be reached by this court.

At the third hearing on this motion, the bank defendants’ counsel stated that Farmer’s counsel filed his Motion for Partial Summary Judgment before discovery concluded. No request for Mass.R.Civ.P. 56(f) discovery was ever made. In any event, it is not disputed that all the material documents are already available to all defendants.

Mr. Franzese’s affidavit, dated March 18, 2013, provides the only evidence as to Mr. Farmer’s default. This affidavit, however, originates from Harmon. Mr. Franzese simply states that he “regularly review[s] foreclosure files to ensure compliance with the requirements for a valid foreclosure sale.” There is no indication as to what is in the files, or the source of information in the files concerning Mr. Farmer. While Harmon’s records may indicate that Harmon had paperwork that Mr. Farmer was in default, it is not proof that he actually was in default. That information would have resided with Omega (the note holder) or the party who held the mortgage at that point in time. None of the Bank Defendants, which purport to have held the mortgage at various points in time, have presented any evidence proving that Mr. Farmer was in default, and if so, that this default occurred prior to May 1, 2008. Mr. Franzese’s affidavit did not specifically indicate what his basis of knowledge was for his statement concerning Mr. Farmer’s alleged default.

The issue of notice pursuant to G.L.c. 244, §35A was not addressed by either FNMA or Harmon in their pleadings filed during the Housing Court proceedings, where the eviction of Mr. Farmer was sought and obtained.

This unsigned letter is not accompanied by any affidavit attesting to the fact that it was actually mailed. Since it is dated September 15, 2010, and Paolo Franzese, Harmon’s attorney who has provided two affidavits, did not become employed at Harmon until January 31, 2011, he has no personal knowledge that this letter was actually sent to Mr. Farmer. More fundamentally, Attorney Franzese fails in his affidavit to state how he has any personal knowledge “that the principal and interest obligation mentioned in the mortgage above referred to were not paid or tendered or performed when due or prior to the sale . . .”

An earlier affidavit of Paolo Franzese had been submitted to the court as part of the paperwork accompanying the foreclosure deed. See, e.g. Exhibit 2, Bank Defs’ Mem. of Law in Supp. of Motion to Dismiss.

In the other letters, the alleged mortgagee is identified as the “present mortgage holder” in a line near the bottom of the letter, right above the space reserved for a signature, practically hidden from the reader. Rather than clearly conveying the identity of the alleged mortgagee, this placement seems to elude ready notice. While this means of identifying the alleged mortgagee may be problematic for the purpose of providing satisfactory notice pursuant to G.L.c. 244, §14, the court need not reach that issue here, where the notice provided is insufficient because it fails to identify the correct mortgagee (MERS, as discussed supra 11(A)), and, in any event, cannot be considered conclusive of effective notice where the letter is not signed and Harmon, due to Franzese’s conclusory language, has not laid the proper foundation to demonstrate that the letter was actually sent.

Contrary to Defendants’ assertions, this case is not like Hendricks and this court is not required to rely on Franzese’s affidavit as proof that the requirements of G.L.c. 244, §14 have been satisfied, especially where the papers provided to this court by Harmon are riddled with inaccuracies, as discussed above. Federal National Mortgage Assoc, v. Hendricks, 463 Mass. 635 (2012). In Hendricks, an affidavit asserting that G.L.c. 244, §14 notice had been given was sufficient when the statutory form requirements of G.L.c. 244, § 15 were at issue. Here, however, compliance with G.L.c. 244, § 14 itself is at issue. An affidavit asserting that the notice requirements have been met “is not conclusive proof of compliance with G.L.c. 244, §14.” Id. at 641.

BOA’s liability on the issue of trespass is not subject to this motion for partial summary judgment, see supra note 1.

Even if this court’s analysis on the issue as to the validity of the assignments is incorrect, the foreclosure is still void for failure to provide appropriate notice pursuant to G.L.c. 244, §35A. As such, the court’s finding that Mr. Farmer has title superior to FNMA remains in effect.

With regard to these counts, within thirty days, the parties may make suggestions to this court as to the specific language the court shall use to restore Farmer’s title.

At the last hearing held on these motions, this court proposed reporting the correctness of any decision to the Appeals Court. However, upon receiving memoranda on the issue, it appears that none of the parties have any interest in having the decision reported. As such, this court will not report it.