Cosgrove, Robert C., J.
The plaintiff, Paul Shea, filed a verified Complaint alleging six counts common to all defendants—Unfair Debt Collection Practices under 15 U.S.C. §1692(a) et seq. (Count I); Unfair Debt Collection Practices under G.L.c. 93, §49 et seq. (Count II); Trespass (Count III); Intentional infliction of Emotional Distress (Count IV); Declaratory Judgment under G.L.c. 231, §1 et seq. (Count V); and Action to Quiet or Establish Title to Land under G.L.c. 240, §6 (Count VI). The matter is before the court on Defendants’ Federal National Mortgage Association (“Freddie Mac”), OneWest Bank, FSB (“OneWest”), and Mortgage Electronic Registration Systems, Inc. (“MERS”) motion to dismiss on the grounds that the plaintiffs “allegations against them fail to state any claim upon which relief can be granted or otherwise fail as a matter of law as pled.” See Mass.R.Civ.P. 12(b)(6).
The essence of the defendants’ argument is that all of the plaintiffs claims are premised on the claim that OneWest, the foreclosing mortgagee, lacked standing to foreclose the plaintiffs mortgage. After hearing, the court concludes that the defendants are correct; accordingly, the motion is allowed.
Bank Defendants’ Motion to Dismiss
On a motion to dismiss, familiar principles apply: in brief, this court is bound to accept as true the factual allegations of the plaintiffs complaint and such reasonable inferences as can be drawn from them. Harvard Crimson, Inc. v. President & Fellows of Harvard Coil., 445 Mass. 745, 749 (2006). The court may also consider “matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint ...” Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000), quoting 5A C.A Wright & A.R. Miller, Federal Practice and Procedure §1357, at 299 (1990).
1. Identity of the Mortgagee
The defendants suggest, and this court agrees, that the material facts are as follows. The plaintiff, Paul Shea, and Melissa Hicks acquired the property at issue, 216 West 16th Street, Unit #1, South Boston, in April 2005, and recorded their deed in the Suffolk County Registry of Deeds. On March 13, 2007, the plaintiff and Hicks obtained a loan from IndyMac Bank, F.S.B., and executed a promissory note in the amount of two hundred eighty-one thousand six hundred dollars. As security for the loan, the plaintiff and Hicks granted a mortgage on the property to MERS. Under the terms of the mortgage:
“MERS” is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender’s successors and assigns. MERS is the mortgagee under this Security Instrument.
(emphasis in the original). MERS’ rights and authority are set forth in the mortgage, which provides in pertinent part as follows:
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower’s covenants and agreements *568 under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property.
(emphasis added). The mortgage further provides that:
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender’s successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
(emphasis added).
On November 11, 2009, MERS assigned the mortgage to OneWest by assignment of
mortgage recorded with the Registry of Deeds on November 23, 2009, at Book 45753, p. 56. Nine days after MERS’ assignment of the mortgage to OneWest, on November 20, 2009, Harmon filed a complaint in the Massachusetts Land Court under the Service Members Civil Relief Act claiming that OneWest was the holder of the mortgage. Judgment entered on March 23, 2010, authorizing OneWest to make entry and to sell the property covered by the mortgage. The Judgment was recorded at the Registry of Deeds on November 4, 2011, at Book 48611, p. 271.
On October 21, 2011, OneWest conveyed the property by foreclosure deed to Fannie Mae; that deed was recorded at the Registry on November 4, 2011, at Book 48611, p. 278, along with the affidavit of Cara J. Martinoli, an attorney for Harmon, attesting to compliance with the publication and mailing notice provisions of G.L.c. 244, §14.
The dispute among the parties is joined over the question of who is the record holder of the mortgage and therefore entitled to exercise the statutory power of sale to foreclose on the subject property. The plaintiff contends that IndyMac Bank is the holder of the mortgage, and that because “(t]here is no assignment recorded by IndyMac Bank conveying the IndyMac mortgage to MIERS or anyone else,” MERS’ November 23, 2009 assignment of the mortgage to OneWest “is void and has no effect on the title to the property.” Complaint, ¶¶22-23. The defendants rest on the plain language of the mortgage listing MERS as “the mortgagee” and the mortgage’s express grant to MERS of the power to “foreclose and sell the property.”
The plaintiff argues that in the context of a motion to dismiss, the court is bound to take what he describes as “the material allegations of the complaint” as true. Plaintiffs Opposition to FNM’s Motion to Dismiss, p. 17. Thus, the argument goes, the court must credit the Complaint’s contention that the plaintiff granted IndyMac a mortgage on his home (¶17); that the defendants knew that IndyMac was the mortgagee (¶¶26-27), and that when Harmon filed a foreclosure petition in the Land Court it should have known that IndyMac was the holder of the note and the mortgage (¶30, 31). Of course, the court is not required to credit “material allegations,” but factual allegations of material fact. The difference is subtle, but important. The court is not obliged to credit legal conclusions tricked out in the costume of fact. Schaer, 432 Mass, at 477 and authorities cited.
The difficulty with arguing that MERS cannot be the true mortgagee is the mortgage’s language to the contrary, which as set forth above, flatly states that MERS is “the mortgagee,” and never describes IndyM-ac as the mortgagee. The mortgage is attached to the plaintiffs Complaint as Exhibit B. Nothing in the mortgage describes IndyMac as the mortgagee, or grants IndyMac the power to foreclose and sell the property. In the absence of such a description, the court is not bound to credit the plaintiffs legal conclusion that IndyMac, not MERS, was the mortgagee.
The plaintiff does not make explicit his argument for deeming IndyMac the mortgagee and holder of the power to foreclose and sell the properly, but some of the allegations in the Complaint which he identifies as obstacles to the motion to dismiss allow a ready inference. He points out, for example, that “Mr. Shea gave IndyMac a promissory note for which th[e] mortgage is security, (Ex. B),” and that there is “precise language” in the mortgage which identifies IndyMac ... as the Lender, (Ex. B pg. 1)." These facts are apparently offered to raise the inference that IndyMac must be the true mortgagee, and therefore necessarily the holder of the power to foreclose and the power of sale.
Massachusetts follows the “title theory” of mortgages, deeming the mortgage “a transfer of legal property to secure a debt.” U.S. BankNat’lAss’nv. Ibanez, 458 Mass. 637, 649 (2011). The borrower’s promise to repay the underlying debt is embodied in a separate document, the promissory note. When a person borrows money and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title; the lender-mortgagee holds legal title, subject to the mortgagor’s equitable right of redemption. Id.; Eaton v. Federal Nat’1 Mortgage Ass’n, 462 Mass. 569, 576 (2012). See Culhane v. Aurora Loan Sews, of Neb., 826 F.Sup.2d 352, 362 (D.Mass. 2011), affd 708 F.3d 282 (1st Cir. 2013).
In Massachusetts, “a mortgage and the underlying note can be split,” held by different persons. Eaton, 462 Mass, at 576. In such a situation, “the holder of the mortgage holds the mortgage in trust for the purchaser of the note ...” Id., citing Ibanez, 458 Mass, at652, citing Barnes v. Boardman, 149 Mass. 106, 114 (1889).
Relying on Eaton, the plaintiff argues that therein the Supreme Judicial Court (SJC) looked at language “which identified MERS as someone acting as the ‘nominee’ of the ‘lender,’ ” language virtually identical to the language *569 used in the mortgage at issue here. This court agrees. The plaintiff concludes that “[t]he court found that whatever this language might mean, it did not make MERS the mortgagee. See Eaton, supra [at] footnote 29.” Plaintiffs Mem., p. 4. This court disagrees. The SJC found nothing of the sort; it simply stated that it was not “clear what nominee means in this context, but the use of the word may have some bearing on the agency question.” Eaton, 462 Mass, at 590 n.29.
What did the SJC mean by “the agency question”? Eaton reviewed entry of a preliminary injunction predicated on a judge’s determination that the plaintiff “would succeed on the merits of her claim that for a valid foreclosure sale to occur, both the mortgage and the underlying note must be held by the foreclosing party.” Id. at 571. The court held that for purposes of G.L.c. 183, §21, and G.L.c. 244, §14, which authorize foreclosure by a “mortgagee” pursuant to a power of sale in the mortgage, the term “mortgagee” means “the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder.” Id. The defendant held only the mortgage, but the SJC further concluded that the mortgagee need not physically possess or actually hold the note “where a mortgagee acts with the authority and on behalf of the note holder.” Id. at 589. Thus, “the agency question,” to be examined on remand.
Although the SJC did not define “nominee” in the context of the same language that is also before this court, the federal district court has held that the term “connotes a narrow form of agency: a ‘person designated to act in place of another, usu[ally] in a very limited way.’ ” Culh-ane, 826 F.Sup.2d at 370. See also Landmark Nat’l Bank v. Kesler, 289 Kan. 528, 538-39 (Kan. 2009) (quoting the same Black’s Law definition) and cases cited.
It is settled law that a mortgagee may assign its mortgage to another party. As an interest in land, such an assignment requires a writing signed by the assignor. Culhane, 708 F.3dat292, citing G.L.c. 183, §3; Ibanez, 458 Mass, at 649. In the case at bar, “the instruments were separated upon their inception: [IndyMac] was granted the note and MERS the mortgage.” Culhane, 708 F.3d at 292 n.6. The mortgage provides that “MERS holds only legal title to the interests granted by Borrower.” That language sounds very much like a description of the rights held by any mortgagee. See Eaton, 462 Mass, at 575-76, citing Negron v. Gordon, 373 Mass. 199, 204 (1977) (“[T]he mortgagee holds bare legal title to the property subject to defeasance on the mortgagor’s performance of the obligation secured by the mortgage”).
Even if the court were to view the lender as the “true mortgagee,” the terms of the mortgage make clear that IndyMac has fully delegated to MERS its powers and its responsibilities: “if necessary to comply with law or custom, MERS (as nominee for Lender and Lender’s successors and assigns) has the right to exercise any or aR of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.” Regardless of how the mortgagee’s powers are sliced or delegated, “an equitable trust exists between the mortgagee of record and the . . . noteholder, as such a trust is always implied by Massachusetts law.” Culhane, 708 F.3d at 293, citing Eaton, 462 Mass, at 576-77 n. 10, and Ibanez, 458 Mass, at 651-52. In sum, MERS is the mortgagee of record, and in any event, the “mortgagee” for purposes of the instant litigation.
Count I of the plaintiffs Complaint alleges that the defendants violated federal fair debt collection practices as set forth in 15 U.S.C. §1692(a) et seq. in that they “knew or should have known that OneWest was not the holder of the mortgage on the property” when Harmon communicated One West’s intent to file a foreclosure petition, ¶47, when OneWest and Harmon advertised the public auction for the property, ¶48, and that “if the defendants conducted a foreclosure auction at the property they knew that they did not have the legal right to do so,” ¶53. For the reasons explained above, the court concludes that the mortgage attached to the Complaint as Exhibit B establishes that MERS is the mortgagee, or at the very least, its agent with full power to act as mortgagee. Because MERS was the mortgagee, it could assign the mortgage to OneWest, and Exhibit F attached to the Complaint shows that it did so on November 11, 2009, well before the June 16, 2011 Notice of Mortgage Sale attached as Exhibit G and the June 16, 2011 Notice of Intention to Foreclose attached as Exhibit H.
In opposing the motion to dismiss, the plaintiff states that his Complaint alleges that “[t]he foreclosure petition which named OneWest as the plaintiff was filed in the Massachusetts Land Court before the MERS to OneWest assignment was recorded, which rendered it void a[b] initio.” Plaintiffs Mem. Opp., p. 5. For the factual proposition, his memorandum cites to no paragraph in his Complaint;[2] for the legal conclusion, he cites to nothing whatsoever. See also Plaintiffs Motion for Partial Summary Judgment, p. 9 & n.3 (again asserting, without citation to authority, that “the Land Court petition was defective ab initio since a mortgagee’s interest must be on record before a foreclosure petition can be filed”). Tlie parties agree, and the attachments to the Complaint confirm, that Harmon, on behalf of OneWest filed a foreclosure petition in the Land Court on November 20, 2009 (Exhibit I), nine days after MERS assigned the mortgage to OneWest, but three days before recording the assignment with the Registry of Deeds (Exhibit F). And so, the court is brought to a pure question of law: was the Land Court petition defective ab initio because it was filed before the assignment was recorded? The answer is no. “A valid assignment of a mortgage gives the holder of that mortgage the statutory power to sell after a default regardless whether the assignment has been recorded.” *570 Ibanez, 458 Mass, at 654, citing G.L.c. 183, §21; MacF-arlane v. Thompson, 241 Mass. 486, 489 (1922).
The court eschews an issue by issue discussion of each of the counts of the Complaint because, despite the parties’ disagreement as to whether MERS should be considered the mortgagee of what the plaintiff describes as the INDYMAC mortgage, they appear to be in agreement that that issue is dispositive of the plaintiffs various claims. See Plaintiffs Mem., p. 8 (defendants’ motion to dismiss states debt collection act claim under G.L.c. 93, §39 should fail for its reliance on the same “wrong” “basic premise” as its argument to dismiss the federal action); p. 8 (argument “just as wrong in the trespass claim as it was in the debt collection claim”); and p. 9 (“defendants! ] seek to dismiss the emotional distress claim on the same misguided basis as the other counts” and motion to dismiss the declaratory judgment action and the action to quiet title are also “based on the assumption that the MERS assignment created an interest in Mr. Shea’s home”). The court having resolved the question of MERS’ status against the plaintiff, concludes that the remaining counts of the plaintiffs Complaint should be dismissed.
While the present case was under advisement, counsel for the plaintiff was kind enough to provide the court with a copy of another justice’s decision in a case bearing a number of similarities to this one, Farmer v. Federal Nat’lMortgageAss’n, 31 Mass. L. Rptr. 204 (Mass.Super. 2013). Therein, another justice of this court reached essentially the opposite conclusion with respect to MERS’ status. Our disagreement, at bottom, is on the meaning of the term “nominee,” and how to interpret the SJC’s language in Eaton. The Farmer opinion essentially suggests that MERS may only act as a result of a discrete instruction by the lender to assign a particular mortgage. This judge is of the view that MERS could fulfill its agency role by following well-understood general principles adopted by the lender. That MERS was off on a frolic requires the indulgence of an unnecessary legal fiction; if MERS were in the habit of acting contrary to the general instructions of its principal, it would soon cease to exist, its use in facilitating mortgage transactions essentially compromised. To judicially straightjacket MERS with a discrete instruction requirement would go far to nullify its usefulness, although it is also possible that incorporating a definition of “nominee” into the mortgage instrument might remedy the problem. See Kesler, 298 Kan. at 538-39 (noting that the absence of a definition of “nominee” “the parties leave the definition to judicial interpretation,” and discussing variant possibilities).
As the Farmer opinion noted, its view, which is certainly well-reasoned and plausible, has not necessarily been shared by other justices of the Superior Court and other courts, “including the First Circuit CuThane decision.” Presumably, the SJC will soon have an opportunity to clarify its view of “nominee.” Notable as well, that court, despite its declaration that its interpretation in Eaton that the word “mortgagee” in the statutes governing mortgage foreclosures by sale requires a mortgagee to hold the mortgage note would be given only prospective effect, see 462 Mass. 587, has sought amicus briefs on that very question in the pending case of Galiastro v. Mortgage Electronic Registration Systems, Inc., SJC-11299.
Order
For the reasons set forth herein, both defendants’ motions to dismiss are allowed. The court does not find it necessary to reach the summary judgment motions filed by the parties.

he closest appears to be ¶34, which alleges that “[a]U of the defendants knew that MERS was not the record holder of the mortgage on November 23, 2009 when the purported assignment from MERS to OneWest was recorded.”